DR. VIRGINIA HUMPHREY v. MARY SUE BEALL AND J. F. BEALL.

(Filed 1 February, 1939.)

1. **Deeds § 16—Purchasers of lots in subdivision may enforce restrictive covenants inter se only if there is a general plan for development.**

  A purchaser of a lot in a subdivision restricted by deed from the owner of the subdivision to use for residential purposes may restrain another purchaser by *mesne* conveyances from the common source from violating the residential restrictive covenant applicable to his lot only if there is a general scheme for the development of the subdivision for residential purposes and there is some equality of burden and privilege in regard thereto among the purchasers of lots therein.

2. **Same—Covenants and reservations in deeds for lots sold by developer held to show as matter of law absence of general plan for development.**

  Each deed to lots sold by the developer under restrictive covenants provided that the restrictions therein inserted might be changed at any time by mutual written agreement of the grantor and the owner of the lot therein conveyed, and half of the deeds contained a further provision that nothing therein contained should impose any restriction upon the unsold land of the developer and that the developer reserved to itself the free and unrestricted use and right of alienation as to lots not sold. *Held:* The provisions in the registered deeds constituted notice to the grantee or grantees in all the deeds of said provisions, and the covenants and reservations disclose as a matter of law that there was no general scheme to restrict the lots in the development to residential purposes, and therefore a purchaser of a lot by *mesne* conveyances from the developer may not restrain a purchaser from the common source from violating the residential restrictive covenants applicable to his lot.

APPEAL by defendants from *Ervin, Special Judge,* at 28 March, 1938, Extra Civil Term of MECKLENBURG.

Civil action to enjoin defendants from erecting and maintaining a dry cleaning plant and laundry upon lot adjacent to residence lot of plaintiff in alleged violation of restrictive covenants inserted in deeds

pursuant to an alleged general plan for and development of a subdivision of an area of land known as Dilworth in the city of Charlotte.

Plaintiff owns Lot No. 6 and defendants own the adjoining or south half of Lot No. 7 in Block 35 in a subdivision of land covered by map recorded in Map Book 3, at page 10, in the office of register of deeds of Mecklenburg County, and being a portion of the area known as Dilworth. Plaintiff and defendants, respectively, claim title through *mesne* conveyances from a common source, Charlotte Consolidated Construction Company, which conveyed the title to both Lot No. 6 and the said one-half of Lot No. 7 in said block, by deed dated 4 November, 1925, to B. F. Wellons, which was made subject to building restrictions, among others, that the lots should be used for residential purposes only, in dwellings to cost not less than $12,000, which restrictions should be held to run with and bind the lands to be conveyed and all subsequent owners and occupants thereof, provided, however, that any of such restrictions might be changed at any time and in any manner by and with the mutual written consent of the grantor or its successors, and the owner or owners for the time being of the land conveyed, and "provided further, that nothing herein contained should be held to impose any restriction on the land of the grantor not hereby conveyed."

Plaintiff offered evidence tending to show these facts: The Charlotte Consolidated Construction Company, owning certain lands within the corporate limits of the city of Charlotte, began to develop and sell same as high-class suburban property, known as Dilworth. About the year 1922 the company caused to be prepared and registered in Map Book 3, page 10, in the office of the register of deeds of Mecklenburg County, a map covering and showing the plan for subdividing and laying off into blocks and lots (255 lots) a portion or subdivision of Dilworth. Nearly two hundred of the lots in said subdivision were sold under restrictions that lots should be used for residential purposes only, and that dwelling houses to cost from $4,500 to $12,000, the amount being specified in each case and varying in price with respect to location, should be constructed on any lot. In each deed for all the property fronting on Dilworth Road the restrictions as to residence cost was fixed at not less than $12,000. In each of the deeds for all the lots sold except four said residential restrictions were inserted, and in each it is provided that any of the conditions and restrictions therein contained may be changed at any time and in any manner by and with the mutual consent of the grantor, or its successors, and the owner or owners, of the time being, of the land thereby conveyed. In approximately one hundred and twenty-five of those deeds there is inserted the additional provision that nothing therein contained shall be held to impose any restriction upon

any land of the grantor not thereby conveyed, and further reserving all rights, title, and interest in and control over and the right to alter, change or close up any and all the streets shown upon the map in question which are not contiguous to and not necessary to the full enjoyment of the lot described in the deed. This further reservation is also in the deed from Charlotte Consolidated Construction Company to B. F. Wellons.

In the entire development only four lots have been sold and conveyed in nonconformity to such building restrictions: (1) A lot on McDowell Street on the outer edge of the subdivision, conveyed to J. R. Harris without restrictions except as to members of the white race. (2) The Oasis Temple lot, which is restricted to use either for residential purposes or Shrine Temple or for a church. (3) Lot designated as Scottish Rite lot, which is restricted to Scottish Rite Cathedral, or residential purposes. (4) Lot known as Woman's Club lot, which is restricted to use for residential purposes or for a Woman's Club.

Plaintiff has erected on her lot a residence valued at from $24,000 to $30,000. On lots in the subdivision approximately one hundred and fifty dwellings have been erected in conformity to the residential restrictions contained in the said deeds. Along Dilworth Road in a southerly direction all buildings are residences which cost not less than $12,000, many of them being handsome homes costing from $15,000 to $30,000. Approximately sixty lots "scattered over the development" are unsold, and no written instrument has been registered by the Charlotte Consolidated Construction Company imposing any restriction on the unsold lots. And defendants are about to erect a dry cleaning and laundry establishment on their said lot in alleged violation of the restriction under which it was conveyed by the common grantor.

Defendants admit that they intend to erect and maintain a model laundry and dry cleaning plant on their said lot at an early date unless restrained by the court. They deny, however, that in developing the area under consideration the Charlotte Consolidated Construction Company had a general plan or scheme for development and set up other defenses, and offered evidence in support of their contentions.

The court submitted these issues, which were answered by the jury as follows:

"1. Was the subdivision of the lands of the Charlotte Consolidated Construction Company shown in the platted lots upon the map registered in Map Book 3, at page 10, made by the Charlotte Consolidated Construction Company and the restrictive covenants contained in the deeds from it to purchasers of lots thereof heretofore sold inserted in such deeds pursuant to a general plan or development that the use of

lots in such subdivision should be restricted to residential purposes for the mutual benefit of the Charlotte Consolidated Construction Company and purchasers of lots in such subdivision, as alleged in the complaint? Answer: 'Yes.'

"2. Did the plaintiff purchase Lot No. 6, Block 35, of such subdivision by *'mesne'* conveyance from the Charlotte Consolidated Construction Company, as alleged in the complaint? Answer: 'Yes.'

"3. Did the defendants purchase the southern half of Lot No. 7, Block 35, of such subdivision, with notice that the use of such lot was restricted to residential purposes, as alleged in the complaint? Answer: 'Yes.'

"4. Have such substantial, radical and fundamental changes taken place in such subdivision as to render the lots of the plaintiff and defendants and the other lots in the immediate vicinity thereof, in such subdivision, unsuitable for residential purposes, as alleged in the answer? Answer: 'No.' "

From judgment thereon and for permanent injunction, defendants appealed to Supreme Court and assign error.

*Stancill & Davis and Hunter Jones for plaintiff, appellee.*
*H. L. Taylor for defendants, appellants.*

WINBORNE, J. The refusal of defendants' motion for judgment as in case of nonsuit, here assigned as error, present this basic question: Do the covenants and reservations in the deed for lots sold by the developer negative a general plan or scheme for the development of the area of land in question for residential purposes? We are of opinion that as a matter of law the answer is "Yes." The exception is well taken. *Davis v. Robinson,* 189 N. C., 589, 127 S. E., 697.

As a general rule, "the right of grantees from a common grantor to enforce *inter se* restrictive covenants entered into by each with the common grantor is confined to cases where there is proof of a general plan or scheme for the improvement of property, and its consequent benefit, and the covenants have been entered into as part of a general plan to be exacted from all purchasers and to be for the benefit of each purchaser, and the complainant has bought with reference to such general plan or scheme and the covenant has entered into the consideration of his purchase." Vendor and Purchaser, sec. 530; 27 R. C. L., p. 765.

"The fundamental theory upon which these developments are founded is that of equality of burden and equality of privilege; that is to say, each property owner is entitled to the same privilege from the encroachment of undesirable buildings or enterprises, and, therefore, each prop-

erty owner is subjected to the same burden or obligation of doing nothing or permitting nothing to be done to change the essential character of the community." *Brogden, J.,* in *Starkey v. Gardner,* 194 N. C., 74, 138 S. E., 74.

In the present case it is observed that in each deed in which restrictions are inserted, it is provided that at any time and in any manner any of the conditions and restrictions therein inserted may be changed by the mutual written agreement of the grantor and the then owner of the lot conveyed thereby. This provision is notice that the grantee or grantees in any or all of the deeds with the written consent of the Charlotte Consolidated Construction Company may place any kind of building on any lot within the area without right of interference by the owner of any other lot.

It is also observed that in more than half of those deeds there is also inserted the further provision that nothing therein contained shall be held to impose any restriction upon any land of the grantor not thereby conveyed. This provision is notice that the Charlotte Consolidated Construction Company expressly reserves to itself the "free and unrestricted use and right of alienation" of the unsold lots, *Davis v. Robinson, supra,* and may sell without any restriction. The deed under which plaintiff claims contains these covenants. The plaintiff bought with knowledge of them. The plaintiff is charged with notice of the same provisions in the numerous other deeds duly registered.

There is no covenant or other instrument that any future conveyance will contain residential restrictions. The unsold lots are located in various sections of the development. The right to change the restrictions as to lots sold, and the right to sell the unsold lots without restrictions, as above stated, refute the idea of a general plan for residential purposes to be exacted alike from all purchasers, and to be for the benefit of each purchaser.

The plaintiff relies upon the case of *Franklin v. Realty Co.,* 202 N. C., 212, 162 S. E., 199. On the factual situation the decision there is not controlling here.

For these reasons there is error in refusing to grant defendants' motion for judgment as in case of nonsuit, and in granting permanent injunction. The judgment below is

Reversed.