FRANCES H. ROSI AND HUSBAND, FRED D. ROSI v. MARY SHULL McCOY, GARLAND THOMAS McCOY, AND NAUTILUS HOMES, INC.

No. 122PA86

(Filed 2 June 1987)

**Deeds §§ 20.2; 20.6— restrictive covenants—setback requirement—right of developer to waive**

The trial court erred by granting summary judgment for plaintiffs, and not for defendants, in an action to enforce a subdivision restrictive covenant where plaintiffs and defendants owned adjoining lots in a subdivision with a setback requirement of fifteen feet on side lot lines; defendants' house was only 12.5 feet from the lot line; and defendants secured an amendment to the setback restriction under a clause in the restrictive covenants which allowed the developers, and their successors and assigns, to amend, modify or vacate any of the restrictions. The clause allowing modification of the covenants by the developer or its assigns referred to successor developers to successors in title to the lots. The question of whether the reservation by the developers of the right to amend the covenants meant that the covenants were personal

covenants was unnecessarily decided by the Court of Appeals because the defendants had obtained an amendment modifying the setback requirements, the developers still owned lots, the amendment was duly recorded, and the defendants were not in violation of the amendment.

Justice MITCHELL concurring in the result.

ON grant of plaintiffs' petition for discretionary review of a unanimous decision of the Court of Appeals, 79 N.C. App. 311, 338 S.E. 2d 792 (1986), reversing an order of summary judgment for plaintiffs entered by *Watts, J.,* at the 28 January 1985 Session of Superior Court, CURRITUCK County. Heard in the Supreme Court 11 February 1987.

*Trimpi, Thompson & Nash, by Thomas P. Nash, IV, and John G. Trimpi, for plaintiff-appellants.*

*John G. Gaw, Jr., for defendant-appellees.*

FRYE, Justice.

The sole question before this Court is whether the plaintiffs may enforce a restrictive covenant fixing a minimum side setback requirement against defendants when defendants have secured an amendment to this requirement with respect to their lot from the developers pursuant to another provision of the covenants in question. The Court of Appeals held that the plaintiffs could not enforce the original requirement, and we affirm, although on somewhat different grounds.

Plaintiffs and defendants own adjacent lots in the same development, the Whalehead Club Subdivision in Currituck County, North Carolina. The lots in the subdivision are subject to a set of restrictive covenants filed with the Register of Deeds, Currituck County. Paragraph "Fourth" of the covenants, which applies to plaintiffs' and defendants' lots, provides in part that "[n]o building or structure, including porches, shall be erected . . . nearer than . . . 15 feet to any interior side lot line . . . ." When defendants' builder erected a house on their lot, however, the builder placed the house only 12.5 feet from the plaintiffs' lot. Plaintiffs complained and initiated the instant action on 7 November 1983, seeking injunctive relief.

Defendants requested and secured an amendment for their lot to the side setback restriction, from fifteen feet to twelve feet, from the developer pursuant to paragraph "Fifteenth" of the restrictive covenants. Paragraph "Fifteenth" reads:

The Developers, their successors or assigns, reserve the right to amend, modify or vacate any restriction herein contained whenever the circumstances, in the opinion of the Developers, their successors or assigns, warrant such amendment, modification or vacation as being necessary or desirable.

This paragraph applies to the entire development. The developers still owned lots in the subdivision at the time the amendment was given for the defendants' lot. The amendment was duly recorded with the Currituck County Register of Deeds.

All parties moved for summary judgment. The trial judge awarded summary judgment to the plaintiffs and issued an injunction requiring defendants to conform to the original fifteen foot restriction. Defendants were allowed 270 days to move their house. Defendants appealed to the Court of Appeals. Upon the defendants' posting bond, the trial judge postponed enforcement of the injunction pending the outcome of the appeal.

The Court of Appeals reversed the trial judge's decision and remanded the case for entry of summary judgment in favor of the defendants. Relying on a long line of previous decisions of this Court, the Court of Appeals held that the reservation by the developer of the right to amend, modify or vacate any of the restrictive covenants rendered the covenants personal in nature and therefore unenforceable *inter se* by the grantees of the developer. 79 N.C. App. at 313-14, 338 S.E. 2d at 793-94. Plaintiffs petitioned this Court for discretionary review, which was allowed 12 August 1986.

Plaintiffs do not contend that the Court of Appeals misstated the law; instead, they argue that the court misconstrued paragraph "Fifteenth." They contend that in deciding that the developer had reserved a right to amend or modify unilaterally any of the restrictive covenants, the Court of Appeals necessarily construed the phrase "[t]he Developers, their successors or assigns" to mean the developers alone, with words "successors or assigns"

having effect only if the original developers were succeeded in their position as developers by someone else. According to plaintiffs, the Court of Appeals thereby improperly failed to give effect to the word "successors." Plaintiffs would have the Court begin its analysis by interpreting the word "successors" to mean "successors in title to the lots," that is, the lot owners rather than successor-developers. They argue that the Court should then read the phrase "the developers, their successors or assigns" as requiring the developers to obtain the consent of all of the lot owners in the development before exercising the right to amend any of the restrictive covenants. Because the developers acted unilaterally, the plaintiffs contend that defendants' purported amendment is invalid.

We reject the plaintiffs' contentions and agree with the defendants that the Court of Appeals correctly construed paragraph "Fifteenth" to give the developers the right to amend the restrictive covenants unilaterally.

As this Court has previously stated,

[t]he applicable rules of interpretation require that the meaning of the contract be gathered from a study and a consideration of all the covenants contained in the instrument and not from detached portions. It is necessary that every essential part of the contract be considered—each in its proper relation to the others—in order to determine the meaning of each part as well as of the whole, and each part must be given effect according to the natural meaning of the words used.

*Callahan v. Arenson*, 239 N.C. 619, 625, 80 S.E. 2d 619, 623-24 (1954).

Because restrictive covenants are in derogation of the free and unfettered use of land, they are to be strictly construed in favor of the unrestricted use of property. *Shuford v. Oil Co.*, 243 N.C. 636, 91 S.E. 2d 903 (1956); *Ingle v. Stubbins*, 240 N.C. 382, 82 S.E. 2d 388 (1954). All ambiguities will be resolved in favor of the free alienation of land. *Hobby & Son v. Family Homes*, 302 N.C. 64, 274 S.E. 2d 174 (1981). With these principles in mind, we turn first to consider the natural meaning of the words of paragraph "Fifteenth."

Rosi v. McCoy

As used in this paragraph, the word "successors" does not appear to mean all successors in title, as urged by the plaintiffs. Black's Law Dictionary 1283 (rev. 5th ed. 1979) defines a successor as "[o]ne that succeeds or follows; one who takes the place that another has left, and sustains the like part or character; one who takes the place of another by succession." Thus, "successor" does not invariably refer to a successor in title; rather, the reader must consider the nature of the "part or character" to be taken. In paragraph "Fifteenth," this "part or character" is described as "the developers," not "the grantors" or some similar term. Successor-developers thus appears to be the natural meaning of the term "successors" as used in this phrase rather than all successors in title to the lots.

The provisions of paragraph "Fifteenth" support the conclusion that the "part or character" in question was that of the developers as developers rather than as mere lot owners. By its own terms, the paragraph *reserves* a right; this terminology is not consistent with an agreement to exercise the right reserved only with the consent of all other lot owners. The language employed in describing the right reserved, "whenever the circumstances, in the opinion of the Developers, their successors or assigns, warrant such amendment . . . as being necessary or desirable," contains terms generally associated with the exercise of individual judgment. Taken as a whole, the wording in this paragraph is more consistent with an intent to reserve to the developers some flexibility with respect to future development than with an intent for them to bind themselves to make no change unless all of the lot owners agreed.

Even assuming, *arguendo*, that "successors" in this paragraph means successors in title, the phrase "the developers, their successors or assigns" cannot be given plaintiffs' interpretation without altering the ordinary meaning of the construction employed. Plaintiffs argue that for purposes of interpretation, the word "and" should be inserted into the phrase between "developers" and "their successors," so that the phrase would read "the developers *and* their successors or assigns." Read in this manner, plaintiffs argue, the phrase would mandate the consent of any "successors or assigns" before the restrictive covenants could be validly amended or modified. However, a structure in the form, word A, word B, or word C, employed in the phrase under con-

sideration, generally indicates the use of an enumerative series (e.g., coffee, tea or milk). *See* W. Follett, *Modern American Usage* 397-401 (1966). The conjunction employed at the end of the series expresses the relationship between each member of the series, not merely the relationship between its two final members. *See id.* The series here would ordinarily be read as "the developers, or their successors or assigns." While "or" may be conjunctive rather than disjunctive, a conjunctive interpretation is permissive in such usage, not mandatory (e.g., "Would you like cream or sugar?"). *See* W. Follett, *Modern American Usage* 64-65.

Our interpretation is buttressed by the fact that if plaintiffs' interpretation were adopted, paragraph "Fifteenth" would add nothing to the meaning of the covenants. Plaintiffs argue that paragraph "Fifteenth" merely means that if all the lot owners, including the developers, agree, the restrictive covenants may be amended, modified or vacated. However, the law already recognizes the right of owners of lots subject to restrictive covenants to change or vacate the covenants if all consent. *See* P. Hetrick, *Webster's Real Estate Law in North Carolina* § 389 (rev. ed. 1981), and cases cited therein. Interpretations that result in superfluous terms are disfavored. Restatement (Second) of Contracts § 203 and comment b at 93 (rev. ed. 1981).

A consideration of the entire instrument, as a whole, discloses no necessity for giving the words of paragraph "Fifteenth" any meaning other than their natural meaning. Following an introduction in which the lot owners are specifically described as "persons, firms, corporations, hereafter acquiring any property [in the Whalehead development]," the instrument contains thirteen numbered paragraphs restricting the use of the lots in the development. Several of these permit specific actions only with the prior approval of the developers. The fourteenth paragraph provides a mechanism for securing the approval of the developers where required. The fifteenth and final numbered paragraph is the one in question, reserving the right to amend, modify or vacate the covenants. In a closing statement, the instrument essentially sets forth an intention that the covenants run with the land and provides for changing the covenants as to each section after 1992 by agreement of a majority of the lot owners in that section. The lot owners are described in this paragraph as "all parties and all persons claiming under them."

Thus, we note the following points. First, the lot owners are not described as "successors" to the developers in any other portion of the document but are described with specificity as "persons . . . hereinafter acquiring any property" and "all persons claiming under them." Second, the numerous provisions wherein the developers retained a right to approve particular actions by the lot owners indicate a plan for continuing control of the development by the developers. Third, the provision that a majority of the lot owners could change the covenants does not appear until the closing section, separated from paragraph "Fifteenth." Plaintiffs argue that this provision should be read together with paragraph "Fifteenth" as showing a scheme whereby until 1992 the covenants could be changed only with the consent of all lot owners but after that time, by agreement of a majority of the lot owners in an individual section for that section. Were this interpretation correct, however, one would expect to find both of these provisions together in paragraph "Fifteenth," or alternatively, the second provision in a separate paragraph immediately following paragraph "Fifteenth," instead of scattered in different portions of the instrument.

Plaintiffs also argue that the fact that in paragraphs "First" through "Fourteenth," the developers are merely described as "developers," with no reference to "successors or assigns," somehow indicates that the addition of the words "successors or assigns" in paragraph "Fifteenth" compels our acceptance of their interpretation. We are not persuaded. The addition of the phrase "successors or assigns" to paragraph "Fifteenth" renders it unnecessary in the previous paragraphs.

Finally, we note that plaintiffs have shown no other instance wherein a court has interpreted a phrase similar to "developers, their successors or assigns," in a clause in a set of restrictive covenants similar to paragraph "Fifteenth," as having the meaning plaintiffs would have this Court give to paragraph "Fifteenth." *But cf., e.g., Suttle v. Bailey,* 68 N.M. 283, 361 P. 2d 325 (1961) (although plaintiffs' suggested interpretation was apparently not raised in this case, the court interpreted the reservation of a right to amend by the grantor, his successors or assigns, as negating an intent that restrictive covenants run with the land, although such intent was expressly set forth in the agreement).

Although the Court of Appeals correctly construed paragraph "Fifteenth" as reserving to the developers a right to amend the restrictive covenants without the consent of all of the lot owners, the court actually decided a broader question than was necessarily before it. It essentially held that the reservation by the developers of the right to amend the covenants meant that the covenants were personal covenants which could only be enforced by the developers, not by the lot owners *inter se.* 79 N.C. App. at 314, 338 S.E. 2d at 794. The court thereby held that the plaintiffs could not enforce any of the restrictive covenants against these defendants (and necessarily *vice versa*), regardless of whether either party secured an amendment. Strictly speaking, however, the only question before the court was whether the plaintiffs could enforce the original restrictions against the defendants where the defendants had obtained an amendment modifying side setback requirements as to their lot pursuant to paragraph "Fifteenth," the developers still owned lots at that time, the amendment was duly recorded, and the defendants were not in violation of the amendment. Because it is not necessary to decide whether plaintiffs could maintain an action against defendants for violation of the restrictive covenants in the absence of amendment, we expressly decline to decide that question in this action. *See Higdon v. Jaffa*, 231 N.C. 242, 56 S.E. 2d 661 (1949) (where developer had retained a right to sell lots in a subdivision without restriction but never exercised this option, the reservation was rendered wholly nugatory and restrictive covenants could be enforced *inter se* by the lot owners); *Hawthorne v. Realty Syndicate, Inc.*, 300 N.C. 660, 268 S.E. 2d 494 (1980) (a general plan—indicative of an intent that restrictive covenants run with the land—may be shown by the existence of substantially similar restrictions).[1] *Cf. Nelle v. Loch Haven Homeowners' Association, Inc.*, 413 So. 2d 28 (Fla. 1982) (resolving conflict between covenants apparently providing for a general scheme or plan and a reservation by the developers of a right to amend these covenants by reading into the covenants an implied requirement of reasonableness and allowing lot owners to enforce restrictions *in-*

---

1. The Whalehead Subdivision contains 1,117 lots. Upon the record before the Court, the developers had given only six amendments, applying only to the setback requirements. The largest modification shown therein was 4.9 feet to one front setback requirement; modifications of only two to three feet or less are more usual.

*ter se); see also Wright v. Cypress Shores Development Co.*, 413 So. 2d 1115 (Ala. 1982).

The party moving for summary judgment must establish the lack of any triable issue by showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975); *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897 (1972). The record before this Court establishes, and plaintiffs do not contest, that defendants secured an amendment from the developers pursuant to paragraph "Fifteenth," that the developers still owned lots in the subdivision at that time, that the amendment was duly recorded, that defendants are not in violation of the amendment, and that plaintiffs took title to their property with notice of the contents of paragraph "Fifteenth." Plaintiffs contested only the interpretation of paragraph "Fifteenth," contending that the paragraph mandated their consent before a valid amendment could issue. With this question decided against them, the Court of Appeals was clearly correct in reversing the trial judge's order of summary judgment for the plaintiffs.

Defendants also moved for summary judgment. Applying the same standard to the facts just set forth, it is also clear that defendants are entitled to summary judgment as to plaintiffs' action against them. The Court of Appeals remanded the case to the Superior Court, Currituck County, for entry of summary judgment in favor of defendants. Insofar as the Court of Appeals' order awarded summary judgment to defendants only as to plaintiffs' action against them, and not as to any other claims defendants may have asserted in their pleading, this ruling was also correct.

Accordingly, the decision of the Court of Appeals is affirmed as modified herein, and the case is remanded to that court for further remand to the Superior Court, Currituck County, for further proceedings not inconsistent with this opinion.

Modified and affirmed.

Justice MITCHELL concurring in result.

It seems rather clear to me that the covenants in question in this case either run with the land or are personal covenants.

Whether they are one or the other is dependent not upon whether the developers have sold all of the lots in the development, but upon a proper interpretation of the covenants themselves.

Assuming the majority is correct in construing the term "successors" to include only "successor-developers" and not all successors in title to the lots, I share the view of the Court of Appeals that the covenants, so construed, gave "notice to all grantees within the subdivision that, by gaining the consent of the developers, a grantee may place his building on any lot within the area without right of interference by the owner of any other lot." *Rosi v. McCoy*, 79 N.C. App. 311, 313, 338 S.E. 2d 792, 794 (1986). This definition of "successors" compelled the Court of Appeals to conclude that the restrictions are not part of a general plan for residential development for the benefit of each purchaser, but are enforceable only as personal covenants for the benefit of the developers. *See Maples v. Horton*, 239 N.C. 394, 80 S.E. 2d 38 (1954); *Humphrey v. Beall*, 215 N.C. 15, 200 S.E. 918 (1939); Annot., 4 A.L.R. 3d 570 (1965).

The majority avoids deciding whether the covenants in question here are personal covenants by stating that the only question to be decided is "whether the plaintiffs [successors in title to the developers] could enforce the original restrictions against the defendants who had obtained an amendment of the setback requirements from the developers." That was the only question answered by the Court of Appeals, although it did so by holding that the covenants were personal covenants which could be enforced only by the developers and not by the lot owners. The Court of Appeals answered the same question now answered by this Court, but it did so upon a different—and in my view more nearly correct—theory than that relied upon by the majority here.

The theory relied upon by the Court of Appeals, in addition to being correct, is more true than that of the majority here to the general rule recited by the majority—that restrictive covenants are to be construed in favor of the unrestricted use and free alienation of land. The Court of Appeals reached its construction in favor of the unrestricted use of property from the face of the covenants themselves. The majority here avoids the same reasoning only by viewing the covenants in the artificially dim light

of the partial amendment of the covenants as to one of the lots by the developers and the fact that the developers have not yet sold all of the lots in the development.

The opinion rendered by the Court of Appeals made the status of the restrictive covenants before us clear—they were construed to be personal covenants solely for the benefit of the developers. The opinion of the majority of this Court leaves the plaintiffs and remaining lot owners of the development to wonder if their ability to enforce the covenants against other lot owners depends upon whether the developers have granted amendments relating to particular lots or have sold all of the lots in the development. Questions concerning the permissible uses of land must be answered with much more certainty.

For the reasons fully stated in the opinion of the Court of Appeals, I concur only in the result reached by the majority of this Court.