TERRES BEND HOMEOWNERS ASSOCIATION AND DAVID O'NEAL, PLAINTIFFS v. RONALD G. OVERCASH, BRUCE H. SALZMAN AND WIFE, KATHRYN K. SALZMAN; AND STEVEN WAYNE LONDON AND WIFE, PHYLLIS C. LONDON, DEFENDANTS

No. COA06-846

(Filed 7 August 2007)

**1. Deeds— restrictive covenants—exception**

Unambiguous language in restrictive covenants provided that an exception for a particular lot ran with the land rather than being personal to the developer.

**2. Deeds— restrictive covenants—successor in title and successor developer**

Defendant Overcash was a successor of the developer of a lot despite the interjection of another owner in the chain of title.

**3. Deeds— restrictive covenants—read together—exception**

An exception in restrictive covenants allowing access across a lot to extend the subdivision despite the general prohibition on using lots for streets was also an exception to another covenant that lots could be used only for residential purposes.

**4. Deeds— restrictive covenants—easements—access to extend subdivision**

Easements included in a plat and easements which were not included were both permitted by a restrictive covenant which allowed access to a particular lot for the extension of a subdivision.

**5. Deeds— restrictive covenants—development of lot in flood plain—soccer field**

A soccer field was the "extension" of a subdivision within the meaning of restrictive covenants where the lot in question was in a flood plain and was not suitable for the development of homes.

Appeal by plaintiffs and cross-appeal by defendant Ronald G. Overcash from judgment entered 28 November 2005 by Judge W. Erwin Spainhour in Superior Court, Cabarrus County. Heard in the Court of Appeals 19 February 2007.

TERRES BEND HOMEOWNERS ASS'N v. OVERCASH

[185 N.C. App. 45 (2007)]

*Rallings & Tissue, PLLC, by Christopher J. Culp for plaintiff-appellants.*

*Ferguson, Scarbrough & Hayes, PA, by James E. Scarbrough for defendant-appellant Overcash.*

STROUD, Judge.

This is an action for injunctive and declaratory relief concerning the interpretation and enforcement of a Declaration of Restrictive Covenants [Declaration] on residential real property, filed in Superior Court, Cabarrus County. Defendants Ronald G. Overcash and FC Carolina Alliance [FCCA] have constructed three soccer fields on a retained landlocked lot adjacent to the Terres Bend subdivision [Terres Bend]. Plaintiff Terres Bend Homeowners Association [HOA] and plaintiff lot owner David O'Neal, who is also the HOA president, sought a permanent injunction of defendant Overcash's construction of an access road to the soccer fields over an easement from Highway 73 [Highway 73 Easement], arguing that the Declaration does not permit the easement to be used for nonresidential purposes. Defendant Overcash denied the material allegations of plaintiffs' complaint and filed a counterclaim seeking a declaratory judgment granting access to the soccer fields over a separate driveway easement from Banyon Court cul de sac in Terres Bend [Banyon Court Easement] as well as the Highway 73 Easement.

Plaintiffs and defendant Overcash both moved for summary judgment, and Superior Court Judge W. Erwin Spainhour granted and denied each motion in part. In so doing, Judge Spainhour ordered that the Banyon Court Easement may be used "to gain access to a residence or dwelling house, and for no other purpose" but that the "private driveway constructed by the defendant Overcash" from Highway 73 may be used "for the purpose of using the soccer fields . . . for soccer games or practice, whether organized or unorganized, or soccer tournaments." Plaintiffs appeal. Defendant Overcash cross-appeals.

## I. Background

In 1984, John F. Swinson acquired sixty-nine acres of real property in Cabarrus County for the development of Terres Bend. On 21 February 1984, Swinson prepared plats depicting Phases I and II of Terres Bend. Phase I included lots numbered one through six and twenty-three through forty-two. Phase II included lots numbered seven through twenty-two. Phase II was located behind Phase I.

The plat illustrating Phase II also shows a 14.7 acre parcel of land adjoining Terres Bend. This parcel is designated on the plat as land "retained by owner," and has become known as Lot 43. Lot 43 is bordered on the east by Irish Buffalo Creek, the north by the Interstate 85 right-of-way, and the south and west by Terres Bend. It has no direct access to a roadway; however, the plat shows a thirty-foot driveway easement crossing Lot 21 and Lot 22, providing access to Lot 43 off of the Banyon Court cul de sac in Phase II of Terres Bend. A subsequently created, unplatted easement crosses Lot 30 and Lot 33 in Phase I of Terres Bend, providing access to Lot 43 from Highway 73.

On 25 May 1984, Swinson filed the Declaration with the Cabarrus County Register of Deeds. The Declaration specifically referred to lots numbered one through forty-two as shown on the previously pre-pared plats. Covenant 1 provided, in part, "All lots shall be used as residential lots and for no other purpose than residential purposes." Covenant 12 provided:

> No lots shall be used for the purpose of constructing a public street or to provide access to and from property located within Terres Bend Subdivision, or to provide access to and from prop-erties located in Terres Bend Subdivision to properties surround-ing same with the exception of John F. Swinson, his heirs, suc-cessors and assigns who reserve the right to utilize any lots within said subdivision for the extension of the subdivision to adjoining property.

(Emphasis added.)

Swinson filed plats for Phases I and II of Terres Bend with the Cabarrus County Register of Deeds on 26 February 1985.

On 21 January 1986, Swinson conveyed twenty-four of the platted Terres Bend lots to John F. Swinson General Contractors, Inc. [Swinson, Inc.]. The deed from Swinson to Swinson, Inc. provided that the conveyance was "made and accepted subject to Protective Covenants for Terres Bend Subdivision dated 25 May 1984," noting the Deed Book and page of recordation. On 12 December 1994, Swinson conveyed Lot 14C, Lot 39, and Lot 43 to Swinson, Inc., sub-ject to "subdivision restrictions and covenants" for Terres Bend as well as "easements shown in the recorded plat."[1] Finally on 3 March

---

1. On 6 April 1989, Swinson filed a plat of Terres Bend Phase III with the Cabarrus County Register of Deeds. Phase III included lots 14A, 14B, and 14C, and also described lot 43 as "retained land."

1999, Swinson Inc. conveyed Lot 14C, Lot 7, Lot 26, Lot 31, Lot 33, Lot 41, Lot 42 and Lot 43 to defendant Overcash. The deed from Swinson, Inc. to defendant Overcash conveyed "all of the Seller's easements and rights appurtenant to the foregoing property." The deeds described above were General Warranty Deeds conveying each group of lots in its entirety and without reservation except as noted herein.

Thereafter, defendant Overcash obtained approval from the City of Concord to build soccer fields on Lot 43, which were completed in 2004. In so doing, defendant Overcash submitted to the city a boundary survey plat depicting Phase IIA of Terres Bend. Phase IIA consisted solely of the development of soccer fields on Lot 43. The City of Concord's Unified Development Ordinance permits soccer fields in areas zoned Compact Residential, subject to city approval of a site plan.

Defendant Overcash also constructed a private road to access the soccer fields located on Lot 43. The private road crosses Lot 33, which defendant Overcash owns, and Lot 30, which is owned by defendants London who have granted defendant Overcash an easement for the access road. Defendant Overcash leases the soccer fields to FCCA, which is a non-profit youth soccer organization, for $1.00 per year.

On 6 January 2005, plaintiffs filed a complaint against defendant Overcash, seeking a temporary restraining order, preliminary injunction, and permanent injunction. In their complaint, plaintiffs alleged that construction of the access road to Lot 43 over the Highway 73 Easement violated Declaration Covenants 1 and 12 because Lot 43 was not being used for a residential purpose. Defendant answered and counterclaimed, seeking declaratory judgment that the Banyon Court Easement could be used to access Lot 43.

Plaintiffs later amended their complaint to add additional defendants: Bruce and Kathryn Salzman,[2] Steve and Phyllis London, and FCCA. Defendants Salzman are the owners of Lot 21 and defendants London are the owners of Lot 30.

Judge Spainhour granted and denied each party's motion for summary judgment in part, permitting the Highway 73 Easement to be

---

2. On 2 June 2005, defendants Salzman filed a *pro se* answer to plaintiffs' amended complaint in the form of a letter. In the letter, defendants Salzman objected to defendant Overcash's use of the Banyon Court Easement, which crosses their lot, but supported use of the Highway 73 Easement and use of the soccer fields in general. The record does not contain answers filed by defendant FCCA or defendants London.

used to access the soccer fields but limiting the Banyon Court Easement to use as an access only to a residence. Plaintiffs appealed and defendant Overcash cross-appealed.

This Court must now determine whether defendant Overcash possesses the right retained by Swinson in Covenant 12 "to utilize any lots within said subdivision for the extension of the subdivision to adjoining property" and, if so, whether defendant Overcash may use either the Highway 73 Easement or Banyon Court Easement to access Lot 43 and the soccer fields constructed thereon.[3] The parties agree that Lot 43 itself is not subject to the Declaration and may be used for non-residential purposes.

This Court reviews the trial court's award of summary judgment *de novo*. *Falk Integrated Techs, Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999).

## II. Rights held by Defendant Overcash

Plaintiffs argue that defendant Overcash "did not succeed to the rights of [Swinson] as Declarant under the Declaration," and therefore, defendant Overcash does not possess the right retained by Swinson in Declaration Covenant 12 "to utilize any lots within said subdivision for the extension of the subdivision to adjoining property." Although plaintiffs do not cite legal authority in support of this position, plaintiffs appear to argue that Covenant 12 is personal to Swinson and does not "run with the land." Alternatively, plaintiff appears to argue that defendant Overcash is not a "successor" or "assign" of Swinson. We disagree.

### A. Personal Covenant v. Covenant "Running with the Land"

[1] "Covenants accompanying the purchase of real property are contracts which create private incorporeal rights, meaning non-possessory rights held by the seller, a third-party, or a group of people, to use or limit the use of the purchased property." *Armstrong v. The Ledges Homeowners Ass'n, Inc.*, 360 N.C. 547, 554, 633 S.E.2d 78, 85 (2006). "Real Covenants 'run with the land' creating a servitude on the land subject to the covenant." *Id.* A covenant is a real covenant if "(1) the subject of the covenant touches and concerns the land, (2) there

---

3. In their brief, plaintiffs also argue that the trial court should have enjoined the posting of a sign on Lot 33 that advertises the soccer fields. Plaintiffs did not advance this argument during the summary judgment hearing and did not assign error in the record. Accordingly, we do not consider this argument on appeal. N.C. R. App. P., Rule 10(a), (b)(1) (2005).

is privity of estate between the party enforcing the covenant and the party against whom the covenant is being enforced, and (3) the original covenanting parties intended the benefits and burdens of the covenant to run with the land." *Runyon v. Paley*, 331 N.C. 293, 299-300, 416 S.E.2d 177, 182-83 (1992). A covenant that "runs with the land" is "enforceable at law or in equity by the owner of the dominant estate against the owner of the servient estate, whether the owners are the original covenanting parties or successors in interest." *Id.* at 299, 416 S.E.2d at 182-83. However, "a personal covenant creates an obligation or right enforceable at law only between the original covenanting parties." *Id.*

Here, plaintiffs seek the equitable relief of an injunction. *See Wise v. Harrington Grove Cmty Ass'n*, 357 N.C. 396, 407, 584 S.E.2d 731, 739 (2003) ("Prior to the enactment of the [Planned Communities Act], restrictive covenants were generally enforceable only by an action at law for damages or by a suit in equity for an injunction.).[4] Plaintiffs urge the Court to enforce Declaration Covenants 1 and 12 against defendant Overcash to restrict his use of lots 20, 21, 30 and 33 to residential purposes, but also to conclude that the exception contained in Covenant 12 permitting construction of a street or access is personal to Swinson, meaning that defendant Overcash cannot enforce the exception against plaintiffs. By seeking to enforce the Declaration against defendant Overcash, plaintiffs effectively concede that the Declaration "touches and concerns" the land and that there is privity of estate between the defendant Overcash and themselves.

The sole remaining question is whether Swinson and his grantees intended the exception in Covenant 12 to be enforceable by Swinson's successors in interest. "Ordinarily, the parties' intent must be ascertained from the deed or other instrument creating the restriction." *Runyon*, 331 N.C. at 305, 416 S.E.2d at 186. Where the "language contained in a written instrument" is "unambiguous," the question of the parties' intent is a matter of law. *Id.*

Here, Declaration Covenant 18 provides that "[t]hese protective covenants and restrictions are to <u>run with the land</u> and shall be binding on all parties and all persons claiming under them" for a period of

---

4. The Planned Community Act [PCA] became effective 1 January 1999 and "applies in its entirety to all planned communities created on or after that date." *See Wise*, 357 N.C. at 400, 584 S.E.2d at 735. However, some provisions of the PCA, which are not at issue in the case *sub judice*, "also apply to planned communities created prior to 1 January 1999." *Id.*

thirty years. (Emphasis added.) Moreover, Covenant 12 provides that "John F. Swinson, his heirs, successors and assigns . . . reserve the right to utilize any lots within said subdivision for the extension of the subdivision to adjoining property." (Emphasis added.) This is unambiguous language from which the Court concludes that the parties intended the exception contained in Covenant 12 to "run with the land" and to be enforceable by Swinson, his heirs, his successors, and his assigns.

## B. "Successor" or "Assign"

[2] As stated above, Covenant 12 pertains to "John F. Swinson, his heirs, successors and assigns." Plaintiffs argue that defendant Overcash is not a successor of Swinson because "the interjection of [Swinson, Inc.] in the chain of title . . . cuts off any possible argument that [d]efendant Overcash is an 'heir, successor, or assign' of Swinson individually." We disagree.

In *Runyon v. Paley*, the North Carolina Supreme Court explained that a final grantee, who purchases real estate from a grantor who obtained the real estate by mesne conveyance, is a "successor[] in interest" of the original property owner. 331 N.C. at 303, 416 S.E.2d at 185. The Court emphasized that "[t]he mere fact" that the final grantee "did not acquire the property directly from the original covenanting parties is of no moment." *Id.*

Similarly, defendant Overcash obtained Lot 14C, Lot 7, Lot 26, Lot 31, Lot 33, Lot 41, Lot 42 and Lot 43 by conveyance from Swinson, Inc. Swinson, Inc. obtained Lot 43 by mesne conveyance from Swinson. The deeds described above were General Warranty Deeds conveying the lots in their entirety and without reservation, except reference to the Declaration and platted easements. Therefore, defendant Overcash is Swinson's successor in interest and "the mere fact" that defendant Overcash "did not acquire the property directly from" Swinson "is of no moment."

Moreover, defendant Overcash is Swinson's successor in the sense that he is a successive developer of Terres Bend. Citing Black's Law Dictionary 1283 (1979), the North Carolina Supreme Court has defined the term "successor" to mean "[o]ne that succeeds or follows; one who takes the place that another has left, and sustains the like part or character; one who takes the place of another by succession." *Rosi v. McCoy*, 319 N.C. 589, 356 S.E.2d 568 (1987). Thus, the Court concluded, " 'successor' does not invariably refer to a suc-

cessor in title; rather, the reader must consider the nature of the 'part or character' to be taken." *Id.* In *Rosi v. McCoy*, the Court determined that the "natural meaning of the term 'successors' " as used in the restrictive covenant at issue was "[s]uccessor-developers," because the " 'part or character" in question was that of the developers as developers rather than as mere lot owners." *Id.*

Here, defendant Overcash's relationship to Swinson is that of both successor in title and successor-developer. Defendant Overcash, who "engages in the business of developing real estate," purchased Swinson's remaining lots in Terres Bend, as well as the land retained by Swinson when he began developing Terres Bend. The deed from Swinson, Inc. to defendant Overcash conveyed "all of the Seller's easements and rights appurtenant to the foregoing property."

For these reasons, we conclude that defendant Overcash is Swinson's successor for purposes of Declaration Covenant 12.

C. Conclusion

The Declaration, including Covenant 12, "runs with the land" and the exception contained therein, permitting utilization of "any lots within said subdivision for the extension of the subdivision to adjoining property," is exercisable by defendant Overcash, who is Swinson's successor.

III. Easements

[3] Plaintiffs argue that Covenant 1 prohibits use of the Highway 73 Easement and the Banyon Court Easement for non-residential purposes; therefore, the easements may not be used to access the soccer fields defendants Overcash and FCCA have built on Lot 43. Alternatively, plaintiffs argue that the soccer fields are not an "extension of the subdivision"; therefore, the exception contained in Declaration Covenant 12 does not control. Plaintiffs "do not challenge defendant Overcash's right to build and maintain soccer fields" on Lot 43.

In considering plaintiffs argument, we refer to Declaration Covenants 1 and 12, construing them together. *See J.T. Hobby & Son, Inc. v. Family Homes, Inc.*, 302 N.C. 64, 71, 274 S.E.2d 174, 179 (1981) (explaining that each part of a declaration of restrictive covenants must be given effect); *Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967) (When construing restrictive covenants,

the parties intention "must be gathered from study and consideration of all the covenants contained in the instrument . . . creating the restrictions."). Covenant 1 provided, in part, "[a]ll lots shall be used as residential lots and for no other purpose than residential purposes," describing a residential building as a "detached single family dwelling." Covenant 12 provided:

> No lots shall be used for the purpose of constructing a public street or to provide access to and from property located within Terres Bend Subdivision, or to provide access to and from properties located in Terres Bend Subdivision to properties surrounding same <u>with the exception of John F. Swinson, his heirs, successors and assigns who reserve the right to utilize any lots within said subdivision for the extension of the subdivision to adjoining property.</u>

(Emphasis added.) Construing Covenant 1 and Covenant 12 together, we conclude that the exception contained in Covenant 12 is also an exception to the general rule contained in Covenant 1 that Terres Bend lots may be used only for residential purposes: the construction of a public street or access roads is not a residential purpose.

A. Banyon Court Easement

[4] The original plat of Terres Bend registered by Swinson in the Cabarrus County Register of Deeds shows a thirty-foot driveway easement crossing Lot 21 and Lot 22, providing access to Lot 43 off of a cul de sac named Banyon Court. The sole and obvious purpose of the Banyon Court Easement is to provide access to Lot 43 from Terres Bends' existing platted roads. More importantly, the plain language of Covenant 12 permits defendant Overcash to use the Banyon Court Easement to access an extension to Terres Bend. Accordingly, we conclude that defendant Overcash may use the Banyon Court Easement to provide access to an extension of Terres Bend.

B. Highway 73 Easement

The Highway 73 Easement crosses Lot 30 and Lot 33. Defendants London own Lot 30 and have granted permission for defendant Overcash to construct an access road over part of their lot. Defendant Overcash owns Lot 33. Although this easement is not platted, we conclude that it is permitted by the plain language of Covenant 12, which permits defendant Overcash to use "<u>any lot</u>" to access an extension of Terres Bend.

C.  "Extension" of Terres Bend

**[5]**  Plaintiffs argue that the soccer fields are not an "extension" of the Terres Bend residential neighborhood. The Declaration does not define the term "extension"; rather "[s]ound judicial construction" of the covenant requires the Court to give effect to this clause "according to the natural meaning of the words." J.T. Hobby & Son, Inc., 302 N.C. at 71, 274 S.E.2d at 179. The ordinary meaning of the term "extension" is "an act or instance of extending," "the state of being extended," "that by which something is extended," or "an enlargment in scope or degree." Random House Webster's College Dictionary, 472 (1st ed. 1991). To the extent the term is ambiguous, we construe it "in favor of the unrestrained use of land." *J.T. Hobby & Son, Inc.*, 302 N.C. at 70, 178 S.E.2d at 178. "The rule of strict construction is grounded in sound considerations of public policy: It is in the best interests of society that the free and unrestricted use and enjoyment of land be encouraged to its fullest extent." *Id.*

Lot 43, which is located in the 100-year flood plain, is not suitable for the development of single family homes. This land was retained by Swinson at the time he developed Terres Bend. At that time, Swinson also expressly retained the Banyon Court Easement to provide access to the otherwise landlocked lot. In light of these circumstances, we think it clear that Swinson intended that Lot 43 would be developed in the future, but that the development would not include residences.

Defendant Overcash submitted to the City of Concord a boundary survey plat depicting Phase IIA of Terres Bend, which consisted solely of the development of soccer fields on Lot 43. The City of Concord's Unified Development Ordinance permits soccer fields in areas zoned Compact Residential, subject to city approval of a site plan. Plaintiffs do not dispute that the City of Concord approved the construction of soccer fields on Lot 43 as the development of an extension to Terres Bend.

The soccer fields constructed on Lot 43 replace an overgrown and poorly drained field, which was described in an affidavit submitted for purposes of summary judgment as "infested with mosquitos, rodents, and snakes." At least one resident of Terres Bend has commented that "construction of the soccer field has eliminated the rodent and snake problem and nearly eliminated the mosquito problem." The fields are accessible to residents of Terres Bend and members of the local community, including several local youth soccer

teams. Such recreational space is generally a desirable and appropriate extension of a residential subdivision.

We conclude that Lot 43 and the recreational soccer fields constructed thereon may properly be classified as an "extension" of the Terres Bend residential community.

## D. Conclusion

Defendant Overcash may use either the Banyon Court Easement or the Highway 73 Easement or both easements to access an "extension" of Terres Bend. The recreational soccer fields built on Lot 43 are an "extension" of Terres Bend.

## IV. Conclusion

For the reasons stated above, we hold that Declaration Covenant 12 "runs with the land" and that defendant Overcash is a "successor" of Swinson for purposes of the exception contained therein. We further hold that defendant Overcash may use either the Banyon Court Easement or the Highway 73 Easement or both easements to access an "extension" of Terres Bend. The recreational soccer fields built on Lot 43 are an "extension" of Terres Bend. In so holding, we note that plaintiffs' alternative interpretation of the Declaration would render Lot 43 landlocked and unuseable. Finally, we hold that the defendant Overcash's right to use either easement is limited to use for access to Lot 43 as an extension of Terres Bend but is not limited to "using the soccer fields . . . for soccer games or practice . . . or soccer tournaments."[5]

The order entered 28 November 2005 by Judge W. Erwin Spainhour in Superior Court, Cabarrus County is affirmed in part and reversed in part. We remand this case to that court for further proceedings not inconsistent with this opinion.

Affirmed in part; Reversed in part; Remanded.

Chief Judge MARTIN and Judge BRYANT concur.

---

5. We do not mean to imply that defendant Overcash or his successors could in the future use either easement for any purpose whatsoever. We need not and do not rule upon any other potential use for the easements accessing Lot 43 other than the existing use as soccer fields which is at issue, which is a proper extension of the subdivision. However, we also recognize that it is possible that some use other than soccer fields could also be in compliance with the applicable zoning and land use ordinances and could be considered as an "extension of the subdivision" in the future.