FINANCIAL SERVICES OF RALEIGH, INC., PLAINTIFF v. ROSSIE DARRELL BAREFOOT AND ROSSIE KEITH BAREFOOT, CO-EXECUTORS OF THE ESTATE OF ROSSIE B. BAREFOOT; ADA MAE BAREFOOT; ROSSIE KEITH BAREFOOT, INDIVIDUALLY; AND ROSSIE DARRELL BAREFOOT, INDIVIDUALLY, DEFENDANTS

No. COA02-1665

(Filed 6 April 2004)

**1. Judges— questions to parties—ex parte**

Trial judges who have taken a motion under advisement should take care to pose questions to the parties jointly to ensure that no ex parte communications occur.

**2. Compromise and Settlement— settlement in prior action—scope**

Summary judgment was properly granted for defendants in an action arising from a family real estate matter where there had been a settlement and release which encompassed all claims arising from the original conveyance and which had language broad enough to include claims then unknown.

**3. Real Estate— conveyance—family transaction—deceased father—summary judgment for brothers**

The trial judge correctly granted summary judgment for defendants sued in their individual capacities rather than as executors in a family real estate action matter. There was no theory or evidence of any wrongdoing by the defendants (as opposed to their deceased father), and any claim of reformation is barred by the settlement in a prior action.

Appeal by plaintiff from judgment entered 22 July 2002 by Judge Knox V. Jenkins, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 17 September 2003.

*Narron, O'Hale & Whittington, P.A., by O. Hampton Whittington, Jr. and E. Scott Tart, for plaintiff-appellant.*

*Mast, Schulz, Mast, Mills, Stem & Johnson, P.A., by George B. Mast and Bradley N. Schulz, for defendants-appellees.*

GEER, Judge.

The question presented by this appeal is whether a settlement agreement releasing "all claims of any kind" arising out of a conveyance of real property bars subsequent claims of fraud, unfair and

deceptive trade practices, negligent misrepresentation, and mutual mistake in connection with that conveyance. We hold that it does and that the trial court properly granted defendants' motion for summary judgment.

Facts

This appeal arises out of an ongoing family dispute. By deed dated 30 December 1993, the late Rossie B. Barefoot, his wife, Ada Mae Barefoot, and their company Property Investors, Inc. ("the Barefoots") conveyed several tracts of land to Financial Services of Raleigh, Inc. ("FSR") for $400,000.00. FSR is a North Carolina corporation whose primary shareholder and chief executive officer is Ruth B. Thompson, Rossie B. Barefoot's daughter. Included in the properties conveyed to FSR was a tract of land in Benson, North Carolina on which was located a warehouse ("the warehouse property"). The deed contained a metes-and-bounds description of this property and stated that it comprised 1.85 acres.

On 1 November 1995, the Barefoots sued FSR, alleging that prior to the conveyance of the properties to FSR, FSR had agreed to take title only in trust for the Barefoots, to manage and/or sell the properties, to apply any proceeds from the sale of the properties to a mortgage on the properties, and to deed any remaining properties back to the Barefoots upon request. According to the Barefoots' 1995 complaint, FSR refused to reconvey the remaining properties to the Barefoots when requested to do so. The Barefoots' complaint sought specific performance of the alleged agreement to reconvey all remaining properties upon request. FSR filed an answer and counterclaims alleging that the Barefoots' actions in connection with the properties at issue, including the warehouse property, constituted unfair and deceptive trade practices, abuse of process, and slander of title. FSR's counterclaims attached a metes-and-bounds description of each of the properties involved in the counterclaims, including a description of the warehouse property.

On 6 February 1997, Judge Knox V. Jenkins, Jr. granted summary judgment to FSR on the issue of the ownership of the properties and dismissed the Barefoots' claims. The Barefoots appealed to this Court, which affirmed the entry of summary judgment in *Barefoot v. Financial Servs. of Raleigh, Inc.*, 129 N.C. App. 646, 504 S.E.2d 589 (unpublished), *disc. review denied*, 349 N.C. 351, 517 S.E.2d 885 (1998).

Upon remand, FSR's counterclaims were scheduled for trial during the 24 August 1999 session of Johnston County Superior Court, with Judge Henry W. Hight, Jr. presiding. On 24 August 1999, immediately before trial, the parties entered into a settlement agreement resolving FSR's counterclaims against the Barefoots. The handwritten settlement agreement signed by the parties provided, in pertinent part:

> The parties release one another for [sic] all claims of any kind arising out of the subject matter of this litigation except that FSR's obligations under the note & Rossie Barefoot's rights under the note & deed of trust shall remain in full force & effect.

The settlement agreement was presented to Judge Hight who read it into the record.

Later, in the fall of 1999, the Barefoots moved to enforce the settlement agreement. At the hearing on this motion, FSR claimed it was not bound by the settlement agreement because, in part, of misrepresentations by Rossie Barefoot regarding access to the warehouse property. Judge Donald M. Jacobs allowed the motion to enforce the agreement, entering a judgment filed 22 November 1999 that included the following pertinent findings:

> 4. [The Barefoots] and [FSR] voluntarily entered into an agreement to settle all of the issues pending in this action.

> 5. The handwritten settlement agreement was represented by the parties, including [FSR,] to Judge Hight to be a final settlement of all issues pending in this litigation.

> 6. The settlement was accepted by Judge Hight as a complete settlement of this litigation.

> 7. The handwritten settlement agreement constitutes a valid . . . agreement enforceable by the Judgment of this Court.

The 1999 judgment also expressly incorporated the provisions of the handwritten settlement agreement, stating:

> The parties release one another for [sic] all claims of any kind arising out of the subject matter of this litigation except that defendant's obligations under the Promissory Note and plaintiff Rossie Barefoot's rights under the Promissory Note and Deed of Trust shall remain in full force and effect. This release is only as to the parties to the lawsuit.

There is nothing in the record to indicate that FSR ever appealed from or moved to set aside the 22 November 1999 judgment.

Although FSR had owned the warehouse property since 1993, FSR did not have a survey of the warehouse property performed until the fall of 1999. That survey, which was based on the metes-and-bounds description of the property contained in the 1993 deed and was completed on 30 December 1999, revealed that the warehouse property encompassed less acreage than thought, that the access road for the warehouse property was outside the property boundary, that half of the loading dock on the north side of the warehouse was outside the property boundary, and that the southern boundary line for the warehouse property was too close to the building to allow adequate access to the building. The surrounding property was owned by Rossie Keith Barefoot, another child of the Barefoots, who refused to allow FSR to use his property to obtain access.

On 8 May 2001, FSR initiated the current action against the co-executors of the Estate of Rossie B. Barefoot (Rossie Darrell Barefoot and Rossie Keith Barefoot), Ada Mae Barefoot, Rossie Keith Barefoot individually, and Rossie Darrell Barefoot individually. The complaint alleged claims for fraud, unfair and deceptive trade practices, negligent misrepresentation, and mutual mistake, all in connection with the 1993 conveyance of the warehouse property. FSR sought reformation of the 1993 deed to the warehouse property to include the entrance and exit for the access road, the loading dock, and sufficient land to allow reasonable access to the loading dock and to the south side of the building. Alternatively, FSR requested compensatory damages. Attached to the complaint was the 1993 deed with the same metes-and-bounds legal description of the warehouse property that was attached to FSR's 1995 counterclaims.

Defendants moved for summary judgment. Judge Knox V. Jenkins, Jr. granted defendants' motion based on *res judicata* and on the existence of the signed settlement and release. Plaintiff appeals from the trial court's grant of summary judgment.

## Standard of Review

A trial court's ruling on a motion for summary judgment is fully reviewable on appeal because the trial court rules only on questions of law. *Virginia Elec. & Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986). On appeal, this Court's task is to determine whether, on the basis of the materials presented to the trial court, there is a genuine issue

as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *cert. denied*, —— N.C. ——, 276 S.E.2d 283 (1981). The burden is on the moving party to show that there is no triable issue of fact and that he is entitled to judgment as a matter of law. *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, 86, 249 S.E.2d 375, 378 (1978). In deciding the motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 James W. Moore, *Moore's Federal Practice* § 56.15[3], at 2337 (2d ed. 1971)).

[1] Our review of the transcript of the summary judgment hearing raises a concern we believe important to mention. At the close of the hearing, the trial judge asked: "If I run into some questions concerning one party or the other, do you have any objection to me calling one party or the other attorney?" The judge noted that he had "done that before." Although both counsel expressed no objection, we are concerned that such a practice risks violation of Canon 3A(4) of the North Carolina Code of Judicial Conduct. That canon provides that "[a] judge should . . . except as authorized by law, neither knowingly initiate nor knowingly consider *ex parte* or other communications concerning a pending proceeding." Questions regarding a pending motion posed to only one party, whether relating to the facts or the governing law, are likely to constitute unlawful *ex parte* communications.

Requesting the attorneys' consent does not alleviate our concern. As the Arizona Supreme Court noted in *McElhanon v. Hing*, 151 Ariz. 403, 409, 728 P.2d 273, 279 (1986), *cert. denied*, 481 U.S. 1030, 95 L. Ed. 2d 529, 107 S. Ct. 1956 (1987):

> The error was not cured by the judge either telling opposing counsel of his intentions or obtaining consent for the *ex parte* contact. Counsel reasonably might feel constrained from objecting to the judge's request for a conference. Canon 3(A)(4) . . . does not permit the judge to solicit a party's consent to the judge's *ex parte* discussions with another party; rather it prohibits the judge from initiating *ex parte* communications about the pending case. In our view, the judge's solicitation of consent is a form of initiation.

We believe that a request that counsel consent to otherwise *ex parte* communications places the attorneys in a very awkward position. If

trial judges, who have taken a motion under advisement, have additional questions, we urge them to take care to pose those questions to the parties jointly in order to ensure that no *ex parte* communications occur.

I

[2] The primary question presented by this appeal is whether FSR's claims are barred by the settlement and release signed 24 August 1999 and incorporated into an unappealed judgment on 22 November 1999. We hold that FSR's claims against Ada Mae Barefoot and the co-executors of the Estate of Rossie B. Barefoot are barred by that settlement and release.

"A release is a private agreement amongst parties which gives up or abandons a claim or right to the person against whom the claim exists or the right is to be enforced or exercised." 66 Am. Jur. 2d *Release* § 1 (2001). Our Supreme Court has described the effect of a settlement and release as follows:

A completed compromise and settlement fairly made between persons legally competent to contract and having the authority to do so with respect to the subject matter of the compromise, and supported by sufficient consideration, operates as a merger of, and bars all right to recover on, the claim or right of action included therein, as would a judgment duly entered in an action between said persons.

*Jenkins v. Fields*, 240 N.C. 776, 778, 83 S.E.2d 908, 910 (1954). Therefore, if FSR's current claims fall within the scope of the 1999 release, then FSR is barred from recovering on those claims. *Id.*

There is no dispute that FSR and Rossie B. and Ada Mae Barefoot entered into a mutual release of "all claims of any kind arising out of the subject matter of [the 1999] litigation[.]"[1] Further, FSR does not challenge the validity of the release. Indeed, Judge Jacobs has already upheld the settlement agreement including the release in a decision not appealed by FSR. The question before this Court is, therefore, limited to whether FSR's claims fall within the scope of the release.

FSR first contends that its current claims do not arise "out of the subject matter" of the settled litigation. The term "subject matter" has

---

1. The release included only a single exception to the broad release: "FSR's obligations under the note & Rossie Barefoot's rights under the note & deed of trust shall remain in full force & effect." That exception is not applicable here.

been defined as "the topic of dispute in a legal matter," *Webster's Third New International Dictionary* 2276 (3d ed. 1968), and "the thing in which a right or duty has been asserted; the thing in dispute," *Black's Law Dictionary* 1438 (7th ed. 1999). Here, "the topic of dispute" or "the thing in dispute" in the settled litigation was the 1993 conveyance of property, including the warehouse property, by the Barefoots to FSR. The release thus encompasses "all claims of any kind arising out of [the 1993 conveyance of property by the Barefoots to FSR]."

FSR's current claims allege that Rossie B. Barefoot, in selling the property in 1993 to FSR, either fraudulently or negligently misrepresented to FSR the boundary lines of the warehouse property. FSR alleges that it would not have purchased the warehouse property but for the misrepresentations of Mr. Barefoot. With respect to the mutual mistake claim, FSR seeks to reform the deed filed in 1993 because of the parties' mistaken understanding in 1993 of the precise boundaries of the property. In short, each of FSR's claims arises out of the conveyance of the warehouse property by the Barefoots to FSR in 1993 and thus each claim falls within the scope of the release.

Alternatively, FSR contends that because it was not aware of the existence of its claims at the time it signed the release, those claims cannot fall within the scope of the release. Citing *Travis v. Knob Creek, Inc.*, 321 N.C. 279, 283, 362 S.E.2d 277, 279 (1987), FSR contends that there was no bar because the release did not include "future claims or existing non-asserted rights."

In *Travis*, our Supreme Court expressed the "general rule" regarding the scope of a release:

"A release ordinarily operates on the matters expressed therein which are already in existence at the time of the giving of the release. Accordingly, demands originating at the time a release is given or subsequently, and *demands subsequently maturing or accruing, are not as a rule discharged by the release unless expressly embraced therein or falling within the fair import of the terms employed.*"

*Id.* at 282, 362 S.E.2d at 279 (quoting 76 C.J.S. *Release* § 53 (1952); emphasis original). In *Travis*, the plaintiff, an employee and stockholder of defendant Knob Creek, had signed a general release in connection with the sale of Knob Creek's stock to defendant Ethan Allen. Four years later, the plaintiff's employment was terminated. The

Court held that the release did not bar the plaintiff's claim for breach of his employment contract because, at the time he signed the release, he "neither had a cause of action nor had he asserted a legal right to continue working for Knob Creek." *Id.* at 283, 362 S.E.2d at 279. The Court reasoned that a release of "all claims" is a release of "then existing or matured causes of action." *Id.*

In *Sims v. Gernandt*, 341 N.C. 162, 459 S.E.2d 258 (1995), the Supreme Court explained that *Travis* applied when, at the time of the signing of the release, a potential defendant's "obligations had not yet fully matured or accrued." *Id.* at 165, 459 S.E.2d at 260. In *Sims*, the Court affirmed a grant of summary judgment based on a release because "[a]ny responsibility of defendant to plaintiff was already in existence at the time plaintiff signed the document and was therefore released by that document." *Id.*

*Travis* and *Sims* reflect the general rule that "a general release cannot be held to bar a claim which did not exist when it was signed." 76 C.J.S. *Release* § 67, at 619 (1994). In deciding whether a claim not asserted at the time of the release falls within the scope of the release, "[t]he critical inquiry is whether the claim or right can be said to exist such that a party is capable of waiving it or preserving it." *Id.* at 619-20.

As in *Sims*, any legal responsibility of Rossie Barefoot and Ada Mae Barefoot was already in existence when FSR signed the release. As of 1999, the Barefoots had already made the representations that form the basis for the fraud, unfair and deceptive trade practices, and negligent misrepresentation claims. Further, any mutual mistake had occurred six years earlier when the parties entered into the contract for the sale of the property. At the time FSR signed the release, every act necessary to establish liability by the Barefoots had already occurred. *See Hardee's Food Sys., Inc. v. Oreel*, 32 F. Supp. 2d 342, 345 (E.D.N.C. 1998) (release signed on 19 June 1996 barred any claims based on misconduct occurring prior to that date).

FSR relies upon the fact that it had not yet discovered its claims, arguing that it could not release unknown claims. Our courts have, however, long recognized that parties may release existing but unknown claims. In *Merrimon v. Postal Telegraph-Cable Co.*, 207 N.C. 101, 105-06, 176 S.E.2d 246, 248 (1934) (quoting *Houston v. Trower*, 297 F. 558, 561 (8th Cir. 1924)), our Supreme Court recognized that " '[t]he language in a release may be broad enough to cover

all demands and rights to demand or possible causes of action, a complete discharge of liability from one to another, whether or not the various demands or claims have been discussed or mentioned, and whether or not the possible claims are all known." *See also Talton v. Mac Tools, Inc.*, 118 N.C. App. 87, 90-91, 453 S.E.2d 563, 565 (1995) ("Since this language was broad enough to cover all possible causes of action, whether or not the possible claims are all known, plaintiffs cannot rely on their ignorance of facts giving rise to a claim for fraud as a basis for avoiding the release.").

We must determine whether FSR's release encompassed "unknown" claims. The release included "all claims of any kind . . . ." The release excepted only claims under the promissory note from FSR to Rossie Barefoot. Since releases are contractual in nature, we apply the principles governing interpretation of contracts when construing a release. *Chemimetals Processing, Inc. v. Schrimsher*, 140 N.C. App. 135, 138, 535 S.E.2d 594, 596 (2000). Under North Carolina law, "[w]hen the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court[,] and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Piedmont Bank & Trust Co. v. Stevenson*, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52 (internal citations omitted), *aff'd per curiam*, 317 N.C. 330, 344 S.E.2d 788 (1986). Thus, "[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946) (internal citations omitted).

As a result, when the parties stated that they were releasing "all claims of any kind," we must construe the release to mean precisely that: an intent to release all claims of any kind in existence. FSR seeks to add an exception for claims of which it was unaware. We cannot judicially edit the release to provide an exception not agreed to by the parties when they entered into the release. A federal court applying North Carolina law to a release stating that "[the parties] do hereby release the other party . . . from any claims . . . of whatever sort," has held: "The release language does not distinguish between known and unknown claims and the court will not unilaterally graft such a distinction into an otherwise clear provision." *Cardiovascular Diagnostics, Inc. v. Boehringer Mannheim Corp.*, 985 F. Supp. 615, 618-19 (E.D.N.C. 1997), *aff'd without opinion*, 185 F.3d 882 (Fed. Cir. 1999). Similarly, we hold that the language of FSR's release was

FINANCIAL SERVS. OF RALEIGH, INC. v. BAREFOOT

[163 N.C. App. 387 (2004)]

broad enough to include unknown claims and that it, therefore, bars the claims asserted by FSR against the estate of Rossie B. Barefoot and Ada Mae Barefoot in this case. The trial court properly granted summary judgment.

II

**[3]** FSR sued defendants Rossie Keith Barefoot and Rossie Darrell Barefoot individually as well as in their capacity as co-executors of Rossie B. Barefoot's estate. Judge Jacobs specified in the 1999 judgment that the "release is only as to the parties to the lawsuit." Rossie Keith and Rossie Darrell Barefoot, who were not parties to the prior litigation, make no argument that would allow them to benefit from the release. Defendants, however, contended in their motion for summary judgment that "plaintiff can present no evidence to support the claims of fraud, negligent misrepresentation, mutual mistake and unfair trade practice." We hold that summary judgment as to Rossie Keith Barefoot and Rossie Darrell Barefoot was properly entered on that ground.

The complaint asserts no express claim for relief against either Rossie Keith or Rossie Darrell Barefoot and the record before this Court reflects no theory or evidence of any wrongdoing by the Barefoot brothers. The claims for fraud, unfair and deceptive trade practices, and negligent misrepresentation are based solely on the acts of Rossie B. Barefoot. Since neither Rossie Keith nor Rossie Darrell Barefoot was a party to the 1993 conveyance, FSR cannot contend that they participated in any alleged mutual mistake. *Mock v. Mock*, 77 N.C. App. 230, 231, 334 S.E.2d 409, 409 (1985) ("While a written instrument may be reformed on the grounds of mutual mistake, the mistake that the law requires is that of both parties to the instrument.").

Because of the lack of any factual allegations regarding Rossie Darrell Barefoot in the complaint or other materials filed with this Court, it is unclear why he was named as a defendant. We can discern no basis for imposing any liability on Rossie Darrell Barefoot.

It appears, however, that Rossie Keith Barefoot, who owns the property surrounding the warehouse as a result of a 1999 deed from Rossie B. Barefoot, may have been included as a defendant in order to obtain the relief sought: reformation of the 1993 deed. Reformation of the deed would lead to a decrease in the land now owned by Rossie Keith Barefoot. Since, however, the underlying causes of action

allegedly justifying reformation are barred by the release, judgment was also properly entered as to Rossie Keith Barefoot. *See Strickland v. Shearon,* .193 N.C. 599, 603, 137 S.E. 803, 805 (1927) (when court held plaintiff could not proceed against original party to deed as to. claim of mutual mistake, plaintiff also not entitled to proceed against grantee in privity with that original party).

For the foregoing reasons, the trial court correctly granted summary judgment as to all defendants. Because of our resolution of this appeal, we need not address plaintiff's *res judicata* argument.

Affirmed.

Chief Judge MARTIN and Judge BRYANT concur.