# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

PIMPAKTRA A. RUST, individually and in her capacity as a co-manager of Goodenow LLC,

Plaintiff/Counterclaim Defendant,

v.

VINA ELISE RUST and CHAKDHARI ANISSA RUST, individually and in their capacity as co-managers of Goodenow, LLC,

Defendants/Counterclaim Plaintiffs.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2020-0762-SG

## MEMORANDUM OPINION

Date Submitted: January 25, 2023
Date Decided: April 27, 2023

Sean J. Bellew of BELLEW LLC, Wilmington, Delaware, *Attorney for Plaintiff/Counterclaim Defendant Pimpaktra A. Rust*.

Kenneth J. Nachbar, Lauren K. Neal, and Michael J. Slobom, Jr. of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, *Attorneys for Defendants/Counterclaim Plaintiffs Vina Elise Rust and Chakdhari Anissa Rust*.

**GLASSCOCK, Vice Chancellor**

Before me is a motion to enforce a contract. The contract in question purports to settle all issues among sisters in litigation over their father's estate, which includes, in part, real property held in trust. The disputes among the parties have occupied the attention of multiple courts in multiple jurisdictions. The contract is embodied in a document denominated "Memorandum of Settlement." That document provides that it represents a final settlement of all issues. The parties explicitly agree that their contract can be enforced by a court. It leaves the parties to agree to a more formal settlement document, which would embody a mutual release of claims and resolve some issues not provided for in the Memorandum of Settlement. According to the Plaintiff, try as she might, she has been unable to resolve these remaining issues. Accordingly, and notwithstanding the explicit contractual language, she contends that there was no meeting of the minds, and thus the settlement contract is unenforceable. The Defendants, her sisters, characterize this as an attempt to rely on certain non-material remaining issues as a tool to leverage release from the settlement; an attempt reflecting not unresolved material issues, but instead accommodation of the Plaintiff's case of settler's remorse.

Because I find from the plain language of the contract that all material issues were compromised and settled, the motion to enforce must be granted; with that

1

outcome in mind, the parties should negotiate any remaining, non-material issues in good faith. My reasoning is below.

## I. FACTS

Plaintiff Pimpaktra Rust ("Pim") and the Defendants Vina Rust ("Vina") and Chakdhari Rust ("Anissa") are the daughters of Richard Rust ("Richard").[1] Philip Rust ("Philip"), Richard's brother, created a revokable trust (the "Trust"), which he funded with real property and other valuables.[2] The terms of the Trust granted Richard a lifetime interest in certain properties.[3] The terms of the Trust also provided that, unless Richard directed otherwise, upon Richard's death the property in the Trust was to pass to Richard's daughters in equal shares.[4]

Philip, the Trust's settlor, died in 2010.[5] At that time, Wilmington Trust Company ("Wilmington") served as the Trust's trustee.[6] At Wilmington's insistence, Richard authorized Wilmington to organize a Delaware limited liability company to house the Trust's real estate assets.[7] In response, Goodenow LLC, a

---

[1] Pl.'s Verified Am. and Suppl. Compl. ¶¶ 10–12, 51, Dkt. No. 47. For the sake of clarity, I follow the parties' practice regarding names. No disrespect is intended.
[2] *Id.* at ¶¶ 3, 17–18, 20–21, 27.
[3] *Id.* at ¶ 21.
[4] *Id.* at ¶ 24.
[5] *Id.* at ¶ 18.
[6] *Id.* at ¶ 17.
[7] *Id.* at ¶¶ 27–28; Pl. Pimpaktra A. Rust's Reply to Defs.' Am. Counterclaims ¶ 6, Dkt. No. 113.

Delaware limited liability company was organized.[8] Wilmington transferred the Trust's property to Goodenow and was originally the LLC's sole member.[9] On June 17, 2016, Bryn Mawr Trust Company of Delaware ("Bryn Mawr" or the "Trustee"), a Delaware limited purpose trust company, replaced Wilmington as trustee and sole member of the LLC.[10] Richard passed away on September 23, 2019, without appointing beneficiaries to receive the corpus, which accordingly was to pass to his daughters.[11] Much litigation has followed the bestowing of this and other bounty from Richard to these sisters.

Pim filed this action (the "Delaware Action") on September 4, 2020, "seeking the dissolution of Goodenow, and alleging, *inter alia*, that the transfer of membership interests in Goodenow to Plaintiff, in lieu of an actual distribution of the real estate interests currently titled in the name of Goodenow, would yield an inequitable result, and would violate both the Trust Agreement, and the testamentary intent of Philip and Richard."[12] Pim brought her action against Vina and Anissa in their individual capacities and as managers of Goodenow, and against Bryn Mawr as trustee.[13]

---

[8] Am. and Suppl. Compl. ¶¶ 13, 28.
[9] Reply to Defs.' Am. Counterclaims ¶ 6.
[10] Am. and Suppl. Compl. ¶ 49.
[11] *Id*. at ¶¶ 25, 50.
[12] *See* Verified Compl. for Breach of Contract, Dkt. No. 1; Pl.'s Answer to Defs.' Opening Br. Supp. Mot. Enforce Settlement 8, Dkt. No. 145 (citing Am. and Suppl. Compl. ¶¶ 86–87, 96–97).
[13] Compl. 1 (Preliminary Statement).

On September 11, 2020, Plaintiff filed a partition action in Jackson County North Carolina (the "North Carolina Action").[14] Among other causes of action, the North Carolina Action sought partition of estate property not held by Goodenow.[15]

On July 26, 2021, Pim filed an amended complaint in this Court.[16] The amended complaint named Vina, Anissa, and Bryn Mawr as defendants.[17]

Pim filed a third action in the Superior Court of Thomas County Georgia on July 1, 2021, which was removed to the United States District Court for the Middle district of Georgia on October 19, 2021 (the "Georgia Action").[18] The Georgia action sought a declaratory judgment regarding Pim's ownership and rights in Trust property located in Georgia.[19]

On August 17, 2021, the court in the North Carolina Action ordered the parties to engage in mediation pursuant to North Carolina General Statute § 7A-38-3B.[20] The ordered mediation took place on January 4, 2022.[21] Frank Goldsmith, a member of the North Carolina State Bar, served as the mediator for the session which was

---

[14] Reply to Defs.' Am. Counterclaims ¶ 18.
[15] *Id.*
[16] *See* Am. and Suppl. Compl.
[17] *Id.* at 1 (Preliminary Statement).
[18] Reply to Defs.' Am. Counterclaims ¶ 19; Pl.'s Answer Mot. Enforce Settlement 9. These two sources provide different dates for the initiation of the Georgia Action, July 1, 2021 and August 11, 2021 respectively.
[19] Reply to Defs.' Am. Counterclaims ¶ 19; Pl.'s Answer Mot. Enforce Settlement 9; *see* Am. and Suppl. Compl. ¶ 56.
[20] Pl.'s Answer Mot. Enforce Settlement 10.
[21] Am. Counterclaims Against Pimpaktra A. Rust Ex. 1, Dkt. No. 109.

conducted by video conference.[22]  At the conclusion of mediation, the parties signed the Memorandum of Settlement (the "MOS").[23]

On its face, the MOS resolved the issues among the parties.[24]  Its first line reads "The parties agree that all issues between them are resolved on the following terms."[25]  The parties to the MOS stipulated therein that "a Court may enforce this agreement by entering judgment based upon [its] terms."[26]  The MOS embodied compromises from both sides in the litigation.  Among the MOS's terms, Pim was slated to receive properties in New Hampshire,[27] North Carolina[28] and Georgia,[29] certain tangible personal property,[30] a $1/3^{rd}$ share of certain bullion and silver bars,[31] $4,000,000 cash,[32] and an easement to use an existing driveway on a particular parcel.[33]  Pim was to enter into a lease with the caretaker of one of the New Hampshire properties and convey three lots of her choosing to him.[34]  All property, real or otherwise, that was not to be conveyed to Pim under the agreement was to go

---

[22] Pl.'s Answer Mot. Enforce Settlement 11.
[23] Am. Counterclaims Ex. 1.
[24] *Id.* at Ex.1, at 1.
[25] *Id.*
[26] *Id.* at Ex. 1, at ¶ 16.
[27] *Id.* at Ex. 1, at ¶ 1.
[28] *Id.* at Ex. 1, at ¶ 2.
[29] *Id.* at Ex. 1, at ¶ 3.
[30] *Id.* at Ex. 1, at ¶ 4.
[31] *Id.* at Ex. 1, at ¶ 5.
[32] *Id.* at Ex. 1, at ¶ 8.
[33] *Id.* at Ex. 1, at ¶ 14.
[34] *Id.* at Ex. 1, at ¶ 6.

to Vina, Anissa, and Goodenow.[35]  Upon the resolution of other litigation involving a party not present here, Pim was also to resign as co-executrix of Richard's estate and trustee of a certain trust.[36]  The parties were to work together to resolve that other litigation,[37] to close Richard's estate,[38] and to execute a "mutually acceptable formal final settlement, including a mutual release of all claims, and such other documents, not inconsistent with the terms of" the MOS.[39]

The parties jointly requested a stay of the Georgia Action on January 11, 2022.[40]  That joint motion stated that they "participated in mediation in a separate case in North Carolina and reached a tentative settlement agreement, but several issues remain to be worked out."[41]

On January 28, 2022, in response to an inquiry from this Court, Pim's counsel stated that a "settlement in principle" had been reached and that the parties were

---

[35] *Id.* at Ex. 1, at ¶¶ 5, 7.
[36] *Id.* at Ex. 1, at ¶ 8.
[37] *Id.* at Ex. 1, at ¶ 12.
[38] *Id.* at Ex. 1, at ¶ 9.
[39] *Id.* at Ex. 1, at ¶ 10.
[40] Pl.'s Answer Mot. Enforce Settlement 27.
[41] *Id.* at Ex. F.

"working to finalize the settlement."[42] Plaintiff further requested that pending motions be held in abeyance.[43]

Following the execution of the MOS, the parties tried to produce a formal settlement. Vina and Anissa's counsel sent a draft formal settlement to Pim's counsel in late January 2022.[44] Pim's counsel marked up that draft and returned it in February 2022.[45]

The court in the Georgia Action required a joint status report on March 1, 2022, and the parties duly complied.[46] It reads, "While the case has been stayed, the parties have continued settlement negotiations but have not reached an agreement to fully settle and resolve this litigation. The parties are still in the midst of settlement discussions and hope to reach a resolution soon."[47]

---

[42] Am. Counterclaims ¶ 26; Reply to Defs.' Am. Counterclaims ¶ 26. In pertinent part, the email reads "The plaintiff has reached a settlement in principle with defendants Vina and Anissa Rust and the parties are working to finalize the settlement. I don't expect we will need argument on either motion. Could the parties let you know if that changes, but otherwise hold those motions in abeyance?" Def.'s Opening Br. Supp. Mot. to Enforce Settlement 6, Dkt. No. 121.

[43] *See* Reply to Defs.' Am. Counterclaims ¶ 26 ("The allegation in Paragraph 26 purports to characterize a January 28, 2022 email, a document that speaks for itself, to which Plaintiff refers for its true and correct contents.").

[44] Am. Counterclaims ¶ 27; Reply to Defs.' Am. Counterclaims ¶ 27; Pl.'s Answer Mot. Enforce Settlement 13, Ex. D.

[45] Am. Counterclaims ¶ 28; Reply to Defs.' Am. Counterclaims ¶ 28; Pl.'s Answer Mot. Enforce Settlement 13, Ex. D.

[46] Pl.'s Answer Mot. Enforce Settlement Ex. G.

[47] *Id.*

Vina and Anissa's counsel completed further markups and returned the proposed formal settlement to Pim's counsel in March 2022.[48] Negotiations stalled, and no further drafts were exchanged. On March 25, 2022, in a joint status report to the court in the Georgia Action, the parties stated that they had been "unable to agree to the material terms of a settlement agreement. In a final good faith effort to resolve their disputes and seek to reach a resolution, the parties intend to reconvene before the mediator."[49]

On April 4, 2022, the parties did reconvene with the mediator.[50] That mediation concluded with several issues still outstanding.[51] The mediator sent a "brief summary of the points discussed," but noted that the summary was imperfect and the parties were free to supplement it.[52] Pim's counsel took the opportunity to do so by email.[53] Among the issues discussed in mediation were access to real property for the purposes of appraisal, a date certain for title opinions, the New Hampshire caretaker's lease, the trustee's attorney's fees, the level of the trustee's involvement in any conveyances that were to take place, and the language of the release.[54]

---

[48] Am. Counterclaims ¶ 28; Reply to Defs.' Am. Counterclaims ¶ 28; Pl.'s Answer Mot. Enforce Settlement 13, Ex. D.
[49] Pl.'s Answer Mot. Enforce Settlement Ex. H.
[50] *Id.* at 16.
[51] *Id.* at 29; Opening Br. Mot. Enforce Settlement Ex. 2.
[52] Opening Br. Mot. Enforce Settlement Ex. 2; *See* Pl.'s Answer Mot. Enforce Settlement 29.
[53] Opening Br. Mot. Enforce Settlement Ex. 2; *See* Pl.'s Answer Mot. Enforce Settlement 29.
[54] Opening Br. Mot. Enforce Settlement Ex. 2.

Pim engaged new counsel and further discussions ensued.  However, these discussions proved fruitless, and on August 23, 2022, Pim wrote,

> Obviously, we do not have a settlement.  I have put suggestions in writing to you four times, to no avail.  If you want to put something in writing that you think is reasonable, I'd be more than happy to review it.[55]

Bryn Mawr moved to dismiss,[56] and on September 7, 2022, the parties stipulated to Bryn Mawr's dismissal without prejudice from this action.[57]  I granted Bryn Mawr's dismissal without prejudice on September 8, 2022.[58]

Vina and Anissa filed their Amended Counterclaims on September 30, 2022.[59]  On November 11, 2022, Vina and Anissa filed their Motion to Enforce Settlement and their opening brief in support thereof.[60]  That same day, Pim filed her Motion for Leave to File Second Verified Amended and Supplemented Complaint, which purported to add Bryn Mawr as a defendant.[61]  Bryn Mawr opposed Pim's motion and joined Defendants' motion and briefing thereon.[62]

---

[55] Am. Counterclaims ¶ 33, Ex. 2; Reply to Defs.' Am. Counterclaims ¶ 33.

[56] BMTDE's Mot. to be Removed and for J. on the Pleadings Pursuant to Court of Chancery Rule 12(c), Dkt. No. 75.

[57] Stip. and Prop. Order Re. Status of Bryn Mawr Trust Co. of Del., Dkt. No. 99.

[58] Order Granting Stip. Re. Status of Bryn Mawr Trust Co. of Del, Dkt. No. 101.

[59] *See* Amended Counterclaims.

[60] *See* Mot. Enforce Settlement; *see* Opening Br. Mot. Enforce Settlement.

[61] Pl's Mot. for Leave to File Ver. Second Am. and Supplemented Compl., Dkt. No. 122.

[62] Bryn Mawr Trust Company of Delaware's Opp'n to Pl.'s Mot. Leave to File Second Verified Am. and Supplemented Compl., Dkt. No. 144; Bryn Mawr Trust Company of Delaware's Joinder to Mot. to Enforce Settlement, Dkt. No. 138.

Briefing on both the Plaintiff's and the Defendants' motions concluded January 13, 2023.[63]  I held oral argument on both motions on January 25, 2023, and I consider the matter fully submitted as of that date.[64]

## II. ANALYSIS

### A. Standard of Review

By seeking to enforce the settlement agreement, Defendants' motion sought the final relief requested in their amended counterclaims.[65]  The procedural posture of the Defendants' motion was that of a motion for judgment on the pleadings. Because the matter involves what I find to be unambiguous contractual language, that standard is appropriate.[66]

In support of their positions on the Defendants' motion, however, both parties submitted matters outside the pleadings.  Plaintiffs, in opposition to the Defendants' motion, submitted several exhibits.[67]  Defendants, in support of their motion and

---

[63] *See* Pl's Reply Further Supp. Plaintiff's Motion for Leave to File Second Verified Am. and Supplemental Compl., Dkt. No. 147; *see* Defs.' Reply Br. Supp. Mot. Enforce Settlement, Dkt. No. 148.

[64] *See* Judicial Action Form, Dkt. No. 156.

[65] *See* Am. Counterclaims 19 (Prayer for Relief).

[66] *See Lillis v. AT & T Corp.*, 904 A.2d 325, 329–30 (Del. Ch. 2006) ("As this court has noted previously, judgment on the pleadings . . . is a proper framework for enforcing unambiguous contracts because there is no need to resolve material disputes of fact.") (internal quotations omitted).

[67] Pl.'s Answer Mot. Enforce Settlement Ex. A–J.

their reply brief, submitted the affidavit of Robert Piliero.[68]  In accordance with Rule 12(c), I am excluding such evidence in consideration of the contractual issues before me.[69]

"This Court will grant a motion for judgment on the pleadings when there are no material issues of fact and the movant is entitled to judgment as a matter of law."[70] I view the facts pled and the inferences drawn therefrom in the light most favorable to the non-moving party.[71]

*B. Estoppel/Waiver*

Before turning to an examination of the contract under the standard set out above, I first address a matter that does require examination of submissions outside the pleadings.  The Plaintiff points to various submissions of counsel in the several actions involved, in an attempt to establish that the Defendants are estopped from maintaining that the MOS is enforceable.  I find this assertion unsupported by the record that the Plaintiff has provided.

---

[68] Aff. Robert Piliero Supp. Defs.' Reply Br. Supp. Their Mot. Enforce Settlement, Dkt. No. 149.
[69] Ct. Ch. R. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").
[70] *ITG Brands, LLC v. Reynolds Am., Inc.*, 2017 WL 5903355, at *5 (Del. Ch. Nov. 30, 2017).
[71] *Examen, Inc. v. VantagePoint Venture Partners 1996*, 873 A.2d 318, 321–22 (Del. Ch.), *aff'd*, 871 A.2d 1108 (Del. 2005).

The gravamen of Pim's submissions is that her sisters represented to various courts that a final settlement had not been reached, and thus that they waived the right to enforce the MOS or are judicially estopped from pursuit of rights under the MOS. In Georgia, counsel related that they were still pursuing settlement but had not reached such; other submissions were similar. Other counsel for the same parties stated to other courts that they had a settlement in principle. This was sloppy shorthand, not a knowing waiver of rights or statement to a court that warrants an estoppel.[72] Accordingly, this matter will turn on contract principals, based on the language of the parties' agreement in the MOS.

---

[72] "'[J]udicial estoppel operates only where the litigant's [present position] contradicts another position that the litigant previously took *and* that the Court was successfully induced to adopt in a judicial ruling.'" *Motorola Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859–60 (Del. 2008) (emphasis in original) (quoting *Siegman v. Palomar Med. Techs., Inc.*, 1998 WL 409352, at *3 (Del. Ch. July 13, 1998)). "Although not a formulaic exercise, a court, in applying the principles of judicial estoppel, should consider, among other possible factors, the following: First, a party's later position must be clear and inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Capaldi v. Richards*, 2006 WL 3742603, at *2 (Del. Ch. Aug. 9, 2006) (internal quotation omitted).
"Waiver is the voluntary and intentional relinquishment of a known right." *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005) (internal quotations omitted). "A contractual requirement or condition may be waived where (1) there is a requirement or condition to be waived, (2) the waiving party must know of the requirement or condition, and (3) the waiving party must intend to waive that requirement or condition." *AeroGlobal*, 871 A.2d at 444.

*C. The Settlement is Enforceable Under Either Delaware or North Carolina Law*

Delaware follows the Second Restatement's most significant relationship test when analyzing choice of law in contract disputes.[73]  Under that test, this Court must ask three preliminary questions i) did the parties make an effective choice of law in their contract, ii) if not, is there an actual conflict between the laws of the different states that each party favors, and iii) if so, which state has the most significant relationship.[74]

Here, the MOS lacks a choice of law provision.[75]  Plaintiff favors the law of North Carolina, under which she claims there was no binding agreement.[76]  Defendant favors the law of Delaware but argues that under either state's law the MOS is enforceable.[77]  Under the laws of both states, settlement agreements, such as the MOS, are interpreted using the general principles of contract law.[78]  These principles require a meeting of the minds for a valid contract to have been formed.[79]

---

[73] *Deuley v. DynCorp Intern., Inc.*, 8 A.3d 1156, 1160 (Del. 2010).
[74] *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017).
[75] *See* Am. Counterclaims Ex. 1.
[76] Pl.'s Answer Mot. Enforce Settlement 17–34.
[77] Defs.' Reply Mot. Enforce Settlement 15–33.
[78] *Compare Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010) ("Settlement Agreements are contracts and Delaware courts examine them under well-established law surrounding contract interpretation") *with Chappell v. Roth*, 548 S.E.2d 499, 500 (N.C. 2001) ("This Court has previously stated that compromise agreements, such as the mediated settlement agreement reached by the parties in this case, are governed by general principles of contract law.").
[79] *Compare Kotler v. Shipman Associates, LLC*, 2019 WL 4025634, at *16 (Del. Ch. Aug. 21, 2019), *judgment entered*, (Del. Ch. 2019) ("To form an enforceable contract, the parties must have a meeting of the minds on all essential terms.") *with Chappell*, 548 S.E.2d at 500 ("For an

Intent is objectively, not subjectively, determined based upon the parties' actions at the time of the alleged contracting.[80] In both jurisdictions, where the facts show no agreement on a material term, there is no contract.[81] In other words, I do not need to make a choice of law, because the laws of these jurisdictions are not in conflict.

Plaintiff contends that the MOS is unenforceable because it lacked material terms.[82] Specifically, the Plaintiff argues that the parties left the release language to be provided later, and that the failure to agree to the explicit language for the release renders the MOS unenforceable.[83] In support of that proposition, the Plaintiff cites to *Chappell v. Roth*.[84] According to the Plaintiff, under North Carolina law as elucidated by its Supreme Court in *Chappell*, unless a final form of release is agreed to in a settlement agreement, it is, *per se*, unenforceable. This is not the law in

---

agreement to constitute a valid contract, the parties' minds must meet as to all the terms.") (internal quotation omitted).

[80] *Compare Black Horse Capital, LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *2 (Del. Ch. Sept. 30, 2014) ("Whether both of the parties manifested an intent to be bound is to be determined objectively based upon their expressed words and deeds as manifested at the time rather than by their after-the-fact professed subjective intent.") (internal quotation omitted) *with Se. Caissons, LLC v. Choate Const. Co.*, 784 S.E.2d 650, 655 (N.C. Ct. App. 2016) ("If mutual assent is purportedly manifested in a written instrument but a question arises as to whether there was a genuine meeting of the minds, the court must first examine the written instrument to ascertain the parties' true intentions.") (internal quotation omitted).

[81] *Compare Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1230 (Del. 2018) ("[A]ll essential or material terms must be agreed upon before a court can find that the parties intended to be bound by it and, thus, enforce an agreement as a binding contract.") *with Creech v. Melnik*, 495 S.E.2d 907, 912 (N.C. 1998) ("When there has been no meeting of the minds on the essentials of an agreement, no contract results.").

[82] Pl.'s Answer Mot. Enforce Settlement 22–24.

[83] *Id.* at 23.

[84] 548 S.E.2d 499 (N.C. 2001).

Delaware; "[a] settlement agreement is enforceable if it contains all essential terms, even though it expressly leaves other matters for future negotiation."[85] On review of *Chappell*, I cannot read it as broadly as does the Plaintiff, and I conclude it does not conflict with Delaware law.

In *Chappell*, a plaintiff, who was injured in an automobile accident, had participated in a court-ordered mediation with the defendant driver and his insurance carrier.[86] The outcome of that mediation was a settlement agreement with the following terms and only the following terms: "'Defendant will pay $20,000 within [two] weeks of date of settlement in exchange for voluntary dismissal (with prejudice) and full and complete release, mutually agreeable to both parties.'"[87] The parties were ultimately unable to agree on the terms of the release, and the plaintiff sought to enforce the settlement.[88] In affirming the trial court, the North Carolina Supreme Court stated that the parties had not reached an enforceable settlement because the release was material as a part of the consideration, "the parties failed to agree as to the terms of the release, and the settlement agreement did not establish a method by which to settle the terms of the release."[89]

---

[85] *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1289 (Del. Ch. 2004), aff'd, 867 A.2d 903 (Del. 2005).
[86] 548 S.E.2d at 499.
[87] *Id.* at 499–500.
[88] *Id.* at 500.
[89] *Id.*

The *Chappell* Court begins its analysis by noting that contract principles apply to settlement agreements, and that no contract "results '[w]hen there has been no meeting of the minds on *the essentials* of an agreement.'"[90] *Chappell* then goes on to determine that in the settlement agreement under review, the dispute over the terms of the release was material. *Chappell* turns on the arcana of Tarheel insurance law.[91] The settlement agreement there had a single provision, which formed the entirety of the consideration to be exchanged.[92] The "get" by the plaintiff was cash, the "give" was the solely the release. The reasoning in *Chappell* is not explicit, and understanding the case, I find, involves a close review of the majority and dissenting opinions.[93] At issue, as I understand, was whether the release should include a "hold-harmless" provision protecting the tortfeasor's insurer from liens potentially assertable by those who provided healthcare to the plaintiff.[94] If the release included a hold-harmless provision, presumably, the plaintiff would be subject to claw-back rights to the extent liens were imposed on the defendant insurer. Accordingly, the value of plaintiff's cash "get" would be reduced. Without the hold-harmless provision, conversely, the value of the "give"—the release—was materially

---

[90] *Id.* at 500 (quoting *Creech v. Melnik,* 495 S.E. 2d 907, 912 (1998)) (emphasis added).

[91] *See Charlotte Mecklenburg Hospital Authority v. First of Georgia Insurance Co.*, 455 S.E. 2d 655 (finding that holder of lien from victim of accident may enforce the lien against tortfeasor's insurer).

[92] *See Shallotte Partners, LLC v. Berkadia Commercial Mortgage, LLC*, 821 S.E.2d 665 (N.C. Ct. App. 2018) (examining *Chappell*, 548 S.E.2d at 499–500).

[93] *See Chappell*, 548 S.E.2d at 501 (Edmunds, J., dissenting).

[94] *See id.*

diminished to the insurer defendant.  Thus, the issue was material to the settlement, and absent agreement to this essential term, the settlement was unenforceable.

Here, by contrast, the "give" and the "get" were the method of division of the properties held in trust among all the parties, as well as other issues involving Richard's bounty to his children.  The release of claims ran in both directions and formed only a portion of the consideration to be exchanged.[95]  The parties agreed to "execute a mutually acceptable formal final settlement agreement, including a mutual release of all claims, and such other documents, not inconsistent with the terms of this Memorandum, as shall be necessary or convenient to furthering the purposes of the settlement, including releases, deeds, tax filings, contracts, or other documents."[96]  The wording of that final settlement was yet to be drafted, but the contents of the document were sufficiently definite to be enforceable.  "[A] mutual release of all claims" releases all claims held by the parties against one another.[97]  No claim, known or unknown, would survive beyond the release[98] and no further

---

[95] *See Shallotte Partners*, 821 S.E.2d at *4 (distinguishing *Chappell* on the same grounds).

[96] Am. Counterclaims Ex. 1, at ¶ 10.

[97] *Compare Hob Tea Room v. Miller*, 89 A.2d 851, 856 (Del. 1952) *with Financial Services of Raleigh, Inc. v. Barefoot*, 594 S.E.2d 37, 43 (N.C. App. 2004).

[98] *Compare Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 336–37 (Del. 2012) (finding "merit to the contention that parties entering into a general release are chargeable with notice that any uncertainty with respect to the contours of the dispute . . . is resolved through the release.") (quoting *E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 460–61 (Del. 1999)) *with Fin. Servs. of Raleigh, Inc. v. Barefoot*, 594 S.E.2d 37, 43 (N.C. Ct. App. 2004) ("As a result, when the parties stated that they were releasing "all claims of any kind," we must construe the release to mean precisely that: an intent to release all claims of any kind in existence.").

negotiation of material terms was required because all claims were to be released. Here, by contrast to *Chappell*, the Plaintiff has been unable to point to a material disagreement about the terms of the release; the parties' disagreement is limited to whether the appropriate term was a release of claims "known and unknown" (per Defendants) or a release of claims which "any Party had or now has" (per Plaintiff),[99] which is not a material disagreement in light of the settlement.[100]

In short, I conclude that the law of Delaware and North Carolina is the same. If the terms of a release have not been agreed to, *and* those terms are material to the agreement, the agreement as a matter of contract law is unenforceable.[101] This was the case in *Chappell*; it is not the case here. The fact that an otherwise complete settlement agreement contemplates the formal drafting of a customary release clause does not allow a party to walk away from the agreement by refusing to agree to a release. Where any dispute over the form of release is not material, that dispute is not a magic wand to accommodate settler's remorse.

---

[99] Oral Arg. Def.' Mot. Enforce Settlement Agreement and Pl.'s Mot. Amend 30:13–23, 68:2–69:21, Dkt. No. 159; Pl.'s Answer Mot. Enforce Settlement Ex. D, at 6, 15, 26 (pages numbered sequentially).

[100] To the extent the Plaintiff argues that her language does not embody "unknown" claims, a release of claims a party "had or now has" does *not* exclude unknown claims; in any event, the language in the MOS—agreeing to release "all claims," likewise encompasses unknown claims.

[101] This is consistent with how the lower courts in North Carolina have applied *Chappell*. *See e.g. Smith v. Young Moving & Storage, Inc.*, 606 S.E.2d 173 (N.C. Ct. App. 2004) (enforcing an a settlement despite the absence of a mutual release because there was a meeting of the minds as to all of the settlement's material terms); *DeCristoforo v. Givens*, 2015 WL 3472999, at *2 (N.C. Super. May 29, 2015) (holding that a settlement agreement was sufficiently definite because the parties reached "'a full and final agreement on all issues'" and the agreement was not conditioned on the language of the release).

Plaintiff makes similar, albeit cursory, "meeting of the minds" arguments for other provisions within the MOS. Specifically, she touches upon the agreement to cooperate in the closure of Richard Rust's estate, the agreement to cooperate in good faith towards the resolution of the Amy Chase litigation[102] and preservation of trust assets, the distribution of property, and the required cooperation of Bryn Mawr. None of these supposed lacunae in the contract embody issues material to the parties' settlement. That conclusion is evidenced by the MOS's provision that it resolves "all issues" and is specifically enforceable.

Though the Plaintiff would have me examine the parties' post contracting conduct, I need not do so because the MOS is not ambiguous.[103] Based on the plain language of the MOS, it is enforceable. The parties explicitly agreed that they had settled all issues, and that specific enforcement by a court was agreed to. The non-material issues remaining are best addressed by the parties by negotiation or mediation. If that is unavailing, non-material terms may be supplied by this Court.[104]

---

[102] The Amy Chase litigation is tangential to this action and involves the sisters' stepmother. Pl.'s Answer Mot. Enforce Settlement 12.

[103] *Compare GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012) *with Marina Food Associates, Inc. v. Marina Rest., Inc.*, 394 S.E.2d 824, 830 (N.C. Ct. App. 1990).

[104] *See Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) ("This Court has recognized 'the occasional necessity' of implying contract terms to ensure the parties' 'reasonable expectations' are fulfilled."); *see also* Restatement (Second) of Contracts § 204 ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court").

### D. Plaintiff's Motion to Amend Her Complaint

Bryn Mawr opposes the Plaintiff's motion to amend on the grounds that the amendment would prejudice Bryn Mawr and would be futile.[105] Bryn Mawr argues that prejudice arises from delay and the fact that Bryn Mawr was dismissed from the litigation without prejudice.[106]

Amendments to pleadings are liberally granted and delay alone is an insufficient ground to deny amendment.[107] Bryn Mawr states that prejudice arises from the need to participate in "[full] discovery" after amendment.[108] I fail to see the prejudice here given that Bryn Mawr agreed to participate in discovery after its dismissal.[109] Bryn Mawr makes other arguments, as well.

However, it is unclear to me whether, in light of my decision that the Memorandum of Settlement is enforceable, the request to amend is still before me. The Plaintiff should inform me if she wishes to proceed, and I will issue a decision promptly.

---

[105] Opp'n to Pl.'s Mot. for Leave to File Second Am. Compl. 8–9.
[106] *Id.* at 10–13.
[107] *Wolf v. Magness Const. Co.*, 1996 WL 361502, at *1 (Del. Ch. June 11, 1996).
[108] Opp'n to Pl.'s Mot. for Leave to File Second Am. Compl. 13.
[109] Order Regarding Status of Bryn Mawr Trust Company of Delaware ¶ 4 ("Bryn Mawr shall participate in discovery to the same extent as a party to this action, including with respect to responding to interrogatories or other forms of discovery only available as to parties.").

## III. CONCLUSION

The Defendants' Motion to Enforce is granted, subject to the provision of non-material terms by the parties or the Court. The Motion to Amend is deferred consonant with my decision, above. The parties should provide an appropriate form of order.